Donna BOYD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–CA–001714–MR.

Court of Appeals of Kentucky.

Sept. 23, 2011.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Stephen B. Humphress, Assistant

Attorney General, Frankfort, KY, for appellee.

Before NICKELL and VANMETER, Judges; LAMBERT,[1] Senior Judge.

## OPINION

VANMETER, Judge:

Donna Boyd appeals from the Fayette Circuit Court judgment convicting her of criminal possession of a forged instrument in the first degree (two counts), possession of drug paraphernalia, and of being a persistent felony offender ("PFO") in the second degree. For the following reasons, we affirm.

Around 6:30 a.m. on July 8, 2007, a Lexington Police Officer, while on routine patrol in what he described as a high crime drug area, observed what appeared to be a vehicle driving without a license plate.[2] Before the officer had an opportunity to pull the vehicle over, the vehicle stopped and a woman exited from the passenger's side door and walked in the direction of a man standing on the corner. The officer approached the vehicle's driver, later identified as Boyd, who told the officer that she was in the area looking for a relative. Boyd later said she was looking for a friend. Another female passenger was in the vehicle and the third passenger soon returned to the vehicle.

Based on the passengers' suspicious and evasive behavior, the officer ordered the three women out of the vehicle and obtained their identification. An outstanding warrant existed for one of the passengers, who the officer arrested. During a search of the vehicle, the officer discovered what he described as two "obviously counterfeit" one-hundred-dollar bills in Boyd's purse, which was lying open on the bench seat of the passenger compartment of the vehicle. The search also revealed a crack pipe under the driver's side floor mat. Boyd was arrested and ultimately convicted of the charges set forth above. This appeal followed.

On appeal, Boyd raises several claims of error. She first argues that the trial court erred by denying her motion to suppress the counterfeit bills found in her purse since the officers did not have grounds to search the vehicle based on the arrest of one of her passengers. We disagree.

Since Boyd did not make this argument at the suppression hearing, we address her claim of error under the palpable error standard of RCr[3] 10.26, which provides:

A palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Manifest injustice has been interpreted to mean that had the error not occurred, "a substantial possibility exists that the result of the trial would have been different." *Brock v. Commonwealth,* 947 S.W.2d 24, 28 (Ky.1997) (citation omitted). To be considered palpable under RCr 10.26, "[a]n error must seriously affect the fairness, integrity, or public reputation of a judicial proceeding[.]" *Page v. Common-*

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. The vehicle Boyd was driving had a paper license plate displayed in the rear window but due to window tinting, the license plate was not immediately visible to the officer. Boyd was not cited for any violation in connection with the temporary tag.

3. Kentucky Rules of Criminal Procedure.

*wealth,* 149 S.W.3d 416, 422 (Ky.2004) (citation omitted).

█ The standard for appellate review of a trial court's decision on a motion to suppress is set forth in RCr 9.78, which provides that "[i]f supported by substantial evidence the factual findings of the trial court shall be conclusive." If the findings are supported by substantial evidence, we then determine "whether the rule of law as applied to the established facts is or is not violated." *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998) (citations omitted).

█ Warrantless searches are *"per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (emphasis added) (citations omitted). One such exception is a search incident to a lawful arrest, which allows an officer to search an arrestee's person and the area within the arrestee's immediate control for weapons or concealed evidence. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (abrogated by *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011)).

Relying on *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the trial court held that the search of the vehicle, including Boyd's purse, was a valid search incident to the arrest of her passenger. However, following the trial and after Boyd's brief was filed with this court, the United States Supreme Court rendered *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), in which the Court clarified the search inci-

dent to arrest exception as it applies to vehicle searches.[4]

In *Gant,* the Court held that law enforcement may search a vehicle incident to the lawful arrest of a recent occupant of the vehicle "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723. In the case at bar, neither party contends that the vehicle or Boyd's purse was within the arrested passenger's reach, within the reach of any of the recent vehicle occupants, or that any reasonable possibility existed that the vehicle or purse contained evidence relevant to the outstanding warrant arrest. Thus, applying *Gant* to the present case appears to render the search of the vehicle, including Boyd's purse, unconstitutional.

That being said, the United States Supreme Court recently rendered *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), in which it held that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule. *Id.* at 2429. In *Davis,* the defendant was charged with unlawful possession of a firearm based on discovery of a revolver in a stopped vehicle in which he was a passenger. *Id.* at 2425–26. At the time of the search, the Supreme Court had not yet rendered *Gant* and the District Court denied Davis's motion to suppress under *Belton,* which authorizes the search of a vehicle's passenger compartment incident to a recent occupant's arrest. *Id.* at 2426.

While Davis's appeal from his conviction was pending with the Eleventh Circuit,

---

4. Although *Gant* was not rendered at the time her brief was filed with this court, Boyd does argue in her brief that the *Chimel* justifications for a search were not present here.

Thus, we believe that the argument relating to the search of the vehicle is properly before this court, particularly in light of the trial court's ruling.

*Gant* was rendered. *Id.* at 2426. Thereafter, the Eleventh Circuit applied *Gant* and held that the search of the vehicle violated his Fourth Amendment rights, but nonetheless upheld the District Court's decision not to suppress the revolver and affirmed Davis's conviction. *Id.* The United States Supreme Court granted certiorari.

In its decision, the Supreme Court noted that:

> The Fourth Amendment protects the right to be free from "unreasonable searches and seizures," but it is silent about how this right is to be enforced. To supplement the bare text, this Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation. The question here is whether to apply this sanction when the police conduct a search in compliance with binding precedent that is later overruled.

*Davis*, 131 S.Ct. at 2423.

The Supreme Court further noted that under its exclusionary-rule precedents, "[p]olice practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Id.* at 2428 (quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)). Since the police acted in strict compliance with binding precedent at the time of the search and Davis acknowledged that their conduct was in no way culpable, the Court held that the exclusionary rule did not apply so as to justify suppressing the revolver found in the vehicle. *Davis*, 131 S.Ct. at 2428–29.

■ In the present case, the trial court found that the search of the vehicle was authorized under *Belton*, binding prece-

dent at the time of the search. The record does not suggest that the officer's conduct in searching the vehicle was in any way culpable. Accordingly, though the search may have been unconstitutional under *Gant*, application of the exclusionary rule would not deter deliberate and culpable police practices and thus, Boyd's motion to suppress was properly denied.

■ Next, Boyd alleges that the trial court abused its discretion by allowing the arresting officer to testify that one of the ways people purchase drugs on the street is to park some distance away from the seller and approach the seller by foot in order to maintain distance between their vehicle and the seller. Boyd asserts that the officer's testimony was intended to show that the counterfeit bills in her possession were to be used to purchase drugs, and was irrelevant and highly prejudicial. We disagree.

■ This court reviews a trial court's evidentiary rulings for an abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky.2004) (citation omitted). An abuse of discretion occurs if the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citations omitted).

The Kentucky Supreme Court has explained that for evidence to be admissible it must: (1) be relevant under KRE [5] 401 and (2) "its prejudicial effect must not substantially outweigh its probative value." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 302 (Ky.2008) (citing KRE 403). In *Sargent v. Commonwealth*, 813 S.W.2d 801 (Ky.1991), our Supreme Court recognized the reliability of police testimony in drug-related cases, holding that

> [t]he testimony of the two detectives was admissible as that of expert witnesses.

---

5. Kentucky Rules of Evidence.

The police testimony indicates that their opinion was based on experience derived from many drug related investigations. . . .

Both detectives testified about the marijuana trade which is certainly specialized in character and outside the scope of common knowledge and experience of most jurors. The opinion of the police aided the jury in understanding the evidence and resolving the issues. . . .

*Id.* at 802 (internal citations omitted).

Here, the arresting officer testified that he observed the vehicle during his routine patrol in what he described as a high crime drug area. He testified that one way people purchase illegal drugs is to park some distance away from the seller on the street and approach the seller by foot in order to maintain some distance between the vehicle and the seller. He further stated that the behavior of Boyd's passenger in this respect aroused his suspicion. Since the officer's testimony was offered to explain the circumstances at issue, the testimony was relevant and not highly prejudicial.

 Further, even if his testimony should have been excluded, RCr 9.24 directs this court to "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." Under RCr 9.24's harmless error standard, "if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial." *Brewer v. Commonwealth,* 206 S.W.3d 313, 324–25 (Ky.2006) (citation omitted). Here, compelling evidence was offered against Boyd; a search of the vehicle revealed a crack pipe and two counterfeit one-hundred-dollar bills in her purse. No substantial probability exists that the jury would have acquitted Boyd had the officer not so testi-

fied. As a result, any error which may have occurred in admitting the officer's testimony in this regard was harmless.

Next, Boyd argues that palpable error resulted from the trial court admitting the testimony of a counterfeit money expert that the counterfeit bills in Boyd's possession could not have been glued together with a glue stick, as alleged by Boyd's daughter. We disagree.

At trial, Boyd's daughter testified that she made the bills by scanning the front and back of a $100 bill on a computer scanner, printing out the images on two separate sheets of paper, cutting them out with scissors, and gluing them together with a glue stick. On rebuttal testimony, a detective with the Lexington Police Department's Financial Crimes Unit, who is assigned to the United States Secret Service's Electronic Crimes Task Force and investigates counterfeit money, opined that the glue stick allegedly used by Boyd's daughter to glue the two sheets of paper together could not have held the sheets together through the texturizing process which would have been necessary to create the look on these bills.

 Boyd contends that admitting the detective's testimony amounted to palpable error since he is not a "glue expert," yet the record shows that the detective received extensive training from the Secret Service on counterfeit bill identification. He has examined thousands of counterfeit bills over the years, including bills with the front and back glued together, and is familiar with counterfeiting methods and texturizing processes. Thus, the detective was qualified "by knowledge, skill, experience, training, or education" to opine on the bills found in Boyd's purse. KRE 702. Further, any lack of specialized training on the part of the detective concerning glue only went to the weight of his testi-

mony, not his qualification as an expert or the competency of his testimony. *See Owensboro Mercy Health Sys. v. Payne,* 24 S.W.3d 675, 677 (Ky.App.1999) (citation omitted). Accordingly, manifest injustice did not result from admitting his testimony.

Next, Boyd claims that the trial court erred by denying her motion for a directed verdict on the two counts of criminal possession of a forged instrument. We disagree.

 Upon consideration of a motion for a directed verdict,

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserve for the jury questions as to the credibility and weight to be given to such testimony. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."

*Banks v. Commonwealth,* 313 S.W.3d 567, 570 (Ky.2010) (internal citations omitted).

KRS [6] 516.050(1) provides that "[a] person is guilty of criminal possession of a forged instrument in the first degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in KRS 516.020." Boyd argues that the Commonwealth failed to present sufficient evidence of her "intent to defraud, deceive or injure

another[;]" however, case law suggests that intent and knowledge can be established by circumstantial evidence, since defendants rarely admit their criminal intent. *McClellan v. Commonwealth,* 715 S.W.2d 464, 466 (Ky.1986). Further, a jury may make reasonable inferences from the evidence. *Dillingham v. Commonwealth,* 995 S.W.2d 377, 380 (Ky.1999). Weighing the evidence and credibility of witnesses are functions uniquely within the jury's determination and will not be disturbed on appeal. *Partin v. Commonwealth,* 918 S.W.2d 219, 221 (Ky.1996) (citations omitted).

 Here, the evidence presented at trial showed that Boyd was in possession of what was identified as two counterfeit one-hundred-dollar bills, the bills were found lying on top of Boyd's open purse in the vehicle in a high crime drug area, one of the passengers of the vehicle exited and approached by foot a man standing on a corner, and a crack pipe was found in the vehicle. Such circumstantial evidence is sufficient to support a finding that Boyd intended to use the bills to make a purchase. Under the evidence as a whole, we are unable to say that it would have been clearly unreasonable for a jury to find guilt. Accordingly, Boyd's motion for a directed verdict on these two counts was properly denied.

 Finally, Boyd maintains that palpable error resulted from the trial court's omission of the intent element from the jury instructions on the charge of possession of drug paraphernalia. We disagree.

The jury was instructed to find guilt on the charge of possession of drug paraphernalia if it believed that "on or about July 8, 2007, [Boyd] possessed a crack pipe." Boyd argues that this instruction was erro-

neous since KRS 218A.500(2) requires the jury to be instructed that "[i]t is unlawful for any person to use, or to possess *with intent to use,* drug paraphernalia[.]" (emphasis added).

Nonetheless, the Kentucky Supreme Court has held that

[a]ny error in initially failing to set forth the element of intent in the instruction is harmless. The United States Supreme Court has held that while a jury instruction that the law presumes a person to intend the ordinary consequences of his voluntary acts may violate the U.S. Constitution, it nevertheless is subject to harmless error analysis. Hence, both guilt and penalty phase capital trial instructions which contain presumptions of intent to kill have been held harmless where there was overwhelming evidence that whoever killed the victim did so intentionally, and where the main thrust of the defense was non-involvement or intent was not in issue.... Intent is not an issue for the defense when complete denial is asserted. The error, if any, was harmless.

*Foley v. Commonwealth,* 942 S.W.2d 876, 885–86 (Ky.1996) (internal citations omitted). *See also Chestnut,* 250 S.W.3d at 304 (quoting *Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (holding that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.")).

Boyd's defense to the charge of possession of drug paraphernalia was to deny knowledge and ownership of the crack pipe. Intent was not an issue and Boyd did not present the lack thereof as a defense. Hence, any error which may have occurred by omitting the "intent" element from the jury instructions on this count was harmless.

The judgment of the Fayette Circuit Court is affirmed.

NICKELL, Judge, Concurs.

LAMBERT, Senior Judge, Concurs in Result Only.