RENDERED: FEBRUARY 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0085-MR

TRUMAN E. ADAMS, SR.　　　　　　　　　　　　　APPELLANT


v.　　　　APPEAL FROM MONROE CIRCUIT COURT
HONORABLE DAVID WILLIAMS, JUDGE
ACTION NO. 21-CR-00074


COMMONWEALTH OF KENTUCKY　　　　　　　　APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

COMBS, JUDGE: This is a criminal appeal in which the Appellant, Truman E.

Adams (Adams), was convicted of fourth-degree assault and was sentenced to 12-

months' incarceration. On appeal, Adams contends that the trial court erred in

allowing certain testimony when the prosecutor did not provide KRE[1] 404(c)

---

[1] Kentucky Rules of Evidence.

notice of prior bad acts. He also claims that flagrant prosecutorial misconduct rendered the trial fundamentally unfair.

On June 17, 2021, Adams was indicted for assault in the second degree, endangering the welfare of a minor, and being a persistent felony offender (first degree). The indictment alleged that on or about October 21, 2020, Adams "intentionally caused serious physical injury to T.A. his minor child,[2] when he struck him in the head multiple times and repeatedly struck T.A., with a belt around with [*sic*] waistline . . . ."

Kerry Denton, Chief of the Tompkinsville Police Department (TPD) testified. On October 21, 2020, while he was employed by the TPD, Denton was also the school resource officer at the middle school. On the morning at issue, Officer Denton had received a complaint from a teacher about an assault on T.A. When T.A. got off the bus, Officer Denton asked him if he was all right. T.A. immediately burst into tears and said, "No, my daddy hit me in the head." The department of social services was contacted. Ms. Walker with social services arrived, and they conducted an investigation. The indictment followed.

The case was tried on October 26, 2021. T.A. testified. He had been arguing with his mother on the morning in question -- an argument which had started the day before over his brother's use of T.A.'s (music) speaker. T.A.'s dad

---

[2] T.A. was 13 years of age at that time.

got up and spanked him "on his butt." T.A.'s mother went to work. T.A. walked to the bus stop, and Adams came to the bus stop and hit T.A. in the back of the head.

T.A. rode the bus to school that morning. He recalled speaking with Officer Denton when he got to school "just a little, not much." He was asked if he recalled telling Officer Denton that his daddy hit him in the head with his fist and that he "could not see good" for about two minutes. In response, T.A. testified he recalled saying he could not see, but he did not recall the part about the fist. He did not recall telling Ms. Walker (with social services) the same statement. T.A. did not deny telling them about the use of the fist; he testified that he simply could not remember.

The Commonwealth asked T.A. if he remembered telling the police that he thought his dad was on drugs. Adams's counsel objected and approached the bench. The trial court denied Adams's request for a mistrial, admonishing the jury not to consider the statement.

The Commonwealth recalled Officer Denton. According to Officer Denton, T.A. said he was "struck in his head by his father with his fist to the point that he seen stars and had blurry vision for over a minute, maybe close to two." T.A. told Officer Denton that he was scared and fled to his aunt's house. He also said that his dad had come down there to get him, had the belt with him, and made

him go back home. As he was going up the road, his dad was hitting him with the belt.

Asked if he recalled any other statements that T.A. had made about the incident, Officer Denton responded that "when asked why he thought that dad had done it, he [T.A.] had made a drug-related statement." Defense counsel again objected, and the court overruled the objection. The court explained that it had admonished the jury before due to a lack of context; however, it added that if Adams was under the influence when he hit T.A., context was provided. Officer Denton then testified that T.A. said that his dad had been getting angry a lot lately and that he was afraid that his dad was "back on the dope again."

The Commonwealth called C.F., a schoolmate and neighbor, to testify. C.F. recalled an incident between T.A. and his father on October 21, 2020, before school. C.F. was walking from his house to where the bus stopped when he saw Adams walking. Adams looked mad. C.F. heard Adams and T.A. fussing. C.R. testified that he saw Adams hit T.A. on the top of his head with a closed fist -- probably five or six strikes. He added that Adams went inside his house, came back out, and attacked T.A. with a belt.

Dr. Paul Bunn, who attended T.A. at the emergency room that day, also testified. He related that there had been an altercation between the child and his dad, that the child was hit on the back of the head with an open hand, and that

he complained of a headache. Dr. Bunn's history did not reflect that T.A. had been struck with a fist -- or multiple times with a fist. There was no mention of visual problems. Dr. Bunn believed that most of the history came from T.A. Dr. Bunn also believed that one of T.A.'s parents was in the room with him, but he did not remember which one. Records reflect that the authorization for medical treatment was signed by Jessica Adams (T.A.'s mother), that T.A. was experiencing pain "now," that the pain had started at 6:00 a.m., and that the location was the head. Records also reflect that there was a question on an intake form about known allergies and that the source of that information was T.A.'s mother. Dr. Bunn agreed that "all of that" indicated that T.A.'s mother must have been the individual in the exam room with him and that she provided the information that T.A. had only received a slap on the back of the head.

The Commonwealth called Helen Bryant, T.A.'s aunt and Adams's sister, to testify. She lives down the road. On the date in question, T.A. had come to her house, crying. Bryant asked what was wrong. Before the child could respond, his dad came and got him. According to Bryant, Adams was mad. Bryant was concerned about T.A. and called a teacher at school to check on him. Bryant does not know what occurred after T.A. and Adams left. Later on -- "one day last week" -- Adams called Bryant and asked what she was going to say. Defense counsel objected when Bryant was asked if she might say that Adams had

slapped T.A. in the back of the head.  The trial court overruled the objection.  Continuing her testimony, Bryant responded that Adams wanted to know what she was going to say.  Bryant testified that she said she was going to tell the truth.  Bryant testified that no one indicated what "they" would like for her to say.

Sharon Walker from the Cabinet for Health and Family Services testified.  At the time of this incident, Walker was conducting child abuse investigations.  Upon receiving a report that Adams had hit T.A., she interviewed the child at school.  T.A. said that "he had gotten in trouble that morning and his dad had hit him in the back of the head."  T.A. indicated that "he was hit pretty hard in the back of the head, hard enough that he couldn't see really good for a couple of minutes."  By the time Walker talked to him at 10:26 a.m., T.A. said his head had already quit hurting.  According to Walker, T.A. seemed scared and a little bit nervous.  He did not want to get in trouble or say anything to get his dad in trouble.  The Commonwealth asked Walker if T.A. had commented on Adams's demeanor on the morning of the incident:

> PROSECUTOR:  Did he relate in any detail his father's demeanor that morning?
>
> WALKER:  He said his dad was mad, he said that his dad was "on the stuff" was the way that he put it, and that when his dad --
>
> DEFENSE COUNSEL:  Objection.
>
> TRIAL COURT:  Overruled.

WALKER: -- and that when his dad was "on the stuff," again as he put it, that he got mad real easy and that he was really mad that morning.

The Commonwealth called C.F.'s mother, Ashley Cason, as a witness. She recalled the incident in October of last year when her son had seen an altercation between Adams and T.A. The Commonwealth asked if anyone in the Adams family had approached her. Defense counsel objected. The trial court sustained the objection and the witness was excused.

At this point, the Commonwealth rested its case. Defense counsel moved for a directed verdict. The trial court agreed that there was insufficient proof of serious physical injury and directed a verdict on second-degree assault as well as on the endangerment charge. However, the case proceeded on a theory of fourth-degree assault.

The defense called Jessica Adams, T.A.'s mother. On cross-examination, Jessica denied having told Dr. Bunn that it was an open-handed slap to the head. Jessica testified that it was T.A. who had said that to the doctor. Jessica was asked if she knew Ashley Cason. Jessica responded that she knew "of her." The Commonwealth continued, "You don't know her, you've never met her?" Defense counsel objected and argued that the Commonwealth was trying to elicit testimony about Cason. The court observed that the relevance was "kind of lost in the weeds" after dismissal of the felony charge, but it opined that the

testimony might pertain to whether there was collusive activity between Jessica and Adams "to try to cover up this thing." And so the court overruled the objection, cautioning, "Don't go too long." Jessica continued her testimony and denied telling Cason that it would be helpful if C.F. would say on the stand that Adams hit T.A. with an open-handed slap to the head.

The defense rested after Jessica's testimony. The jury found Adams guilty of fourth-degree assault. Adams was sentenced to twelve months in jail. On January 18, 2022, the trial court entered judgment consistent with the jury's verdict.

In his appeal, Adams contends that the trial court erred in allowing the testimony of Officer Denton and Sharon Walker (*i.e.*, that T.A. was afraid that Adams was back on the dope or that he was "on the stuff") without proper notice of prior bad acts as required by KRE 404(c).[3]

---

[3] In relevant part, the KRE 404 provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; . . . .
> >
> . . .
>
> (c) Notice requirement. In a criminal case, if the prosecution intends to introduce evidence pursuant to subdivision (b) of this

The standard of our review of a trial court's admission of evidence is abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941 (Ky. 1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 945.

The Commonwealth responds that although the evidentiary rule may have been properly invoked if it had introduced evidence of a prior beating by Adams while he was under the influence, such was not the case here. The Commonwealth argues that the testimony did not fall under KRE 404(b) because it bore directly on Adams's conduct ***during*** his alleged criminal offense; namely his demeanor when he hit T.A. Thus, the notice requirement of KRE 404(c) was not implicated. We agree.

We also agree with the Commonwealth that even if we were to assume that the trial court erred in admitting the testimony, any arguable error was harmless.

> RCr[4] 9.24 directs this court to "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." Under RCr 9.24's harmless error standard, "if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial."

rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence.

[4] Kentucky Rule of Criminal Procedure.

*Boyd v. Commonwealth*, 357 S.W.3d 216, 222 (Ky. App. 2011) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 313, 324-25 (Ky. 2006)).

In the case before us, the assault itself was not disputed. It was uncontroverted that Adams struck T.A. We do not believe that there is a substantial possibility the result would have been any different if the disputed testimony had been excluded.

Adams also argues that flagrant prosecutorial misconduct rendered the trial fundamentally unfair. He states that the issue is preserved in part and unpreserved in part and requests palpable error review for unpreserved error under RCr 10.26.

> Prosecutorial misconduct is a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment. It may result from a variety of acts, including improper questioning and improper closing argument. Any consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the trial. In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair.

*St. Clair v. Commonwealth*, 451 S.W.3d 597, 640 (Ky. 2014) (internal quotation marks and citations omitted).

Adams contends that the prosecutor committed misconduct in questioning witnesses and during closing statement. With respect to questioning

-10-

witnesses, Adams states that defense counsel objected to multiple instances of the prosecutor's alleging a cover-up; *i.e.*, efforts by Adams to convince Dr. Bunn, C.F., and Helen Bryant to say that there had been a slap with an open hand rather than a fist.

We agree with the Commonwealth that it is unclear what could have been improper regarding the prosecutor's examination of Dr. Bunn. The trial court sustained Adams's objection to Ashley Cason's testimony. The court overruled Adams's objection to the prosecutor's asking Helen Bryant if it had been suggested that she say Adams had slapped T.A. in the back of the head. The court also overruled Adams's objection to the prosecutor's asking Jessica Adams if she knew Ashley Cason because it could pertain to whether there was collusive activity between Jessica and Adams "to try to cover up this thing."

Adams contends that reversal for a new trial is required for the preserved error. However, there is no error. "Despite a defendant's characterization, '[i]ssues involving the admission of evidence or testimony, when ruled upon by the trial court, do not constitute prosecutorial misconduct.'" *Noakes v. Commonwealth*, 354 S.W.3d 116, 122 (Ky. 2011) (quoting *Stopher v. Commonwealth*, 57 S.W.3d 787, 806 (Ky. 2001)).

Adams also claims prosecutorial misconduct in its closing statement, an alleged error which appears to be unpreserved. "For unpreserved prosecutorial

misconduct to be reversible, it must have been flagrant." *St. Clair*, 451 S.W.3d at 640.

> We use a four-part test to determine if a prosecutor's improper comments rise to the level of flagrant misconduct . . . as follows: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

> Of course, this four-part test applies only if a court has determined that a prosecutor's comments were improper.

*Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010).

Adams contends that during his closing, the prosecutor continued discussing how Jessica Adams allegedly tampered with witnesses' testimonies and that it mischaracterized Helen Bryant's testimony. However, Adams's argument is vague and conclusory, wholly lacking in specificity.

In reviewing claims of prosecutorial misconduct, "we must always consider . . . closing arguments as a whole and keep in mind the wide latitude we allow parties during closing arguments." *Young v. Commonwealth*, 25 S.W.3d 66, 74-75 (Ky. 2000) (internal quotation marks and footnotes omitted). "[A] closing argument . . . is just that -- an argument. A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987). Our

review persuades us that the prosecutor's closing argument was not improper --

much less flagrant.

We affirm the judgment of the Monroe Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Robert C. Yang                 Daniel Cameron
Frankfort, Kentucky            Attorney General of Kentucky

                               Matthew R. Krygiel
                               Assistant Attorney General
                               Frankfort, Kentucky