RENDERED:  JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0457-DG

MAURICE GASAWAY                                                    APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2020-CA-0031
HARDIN CIRCUIT COURT NO. 18-CR-00927

COMMONWEALTH OF KENTUCKY                                            APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

Maurice Gasaway was convicted of one count of possession of heroin in Hardin Circuit Court.  The Court of Appeals affirmed.  We granted discretionary review to consider three overarching issues.

First, we must consider the bounds under which the warrantless search of a parolee's vehicle is constitutionally permissible.  We adopt the reasonableness test for such searches under the Fourth Amendment[1] as announced by the United States Supreme Court in *Samson v. California*, 547 U.S. 843 (2006), and we overrule our decision in *Bratcher v. Commonwealth*, 424 S.W.3d 411 (Ky. 2014), to the extent it holds the conditions of parole imposed by Kentucky law are immaterial to the Fourth Amendment analysis.

---

[1] U.S. CONST. amend. IV.

The scope of Section 10 of the Kentucky Constitution[2] is not properly before this Court for review. We hold, albeit for different reasons, the Court of Appeals properly affirmed the trial court's denial of Gasaway's motion to suppress evidence obtained from a warrantless search of his truck.

Second, we must consider whether Kentucky should recognize a per se rule prohibiting the Commonwealth from introducing, in a subsequent proceeding, evidence of a crime for which the defendant has previously been acquitted. We hold Kentucky does not recognize such a per se rule. Nevertheless, we further hold the Court of Appeals erred by affirming the trial court's admission of evidence, under KRE[3] 404(b), of methamphetamine for which Gasaway had been acquitted, and evidence of marijuana for which Gasaway had been found guilty.

Finally, we must consider whether the trial court improperly permitted three witnesses to interpret the contents of a video recording. We hold the Court of Appeals erred by affirming the trial court's decision allowing the first witness to testify regarding events he did not perceive in real-time. Any questions regarding the propriety of the other two witnesses' testimony were not properly preserved for review.

Therefore, for the following reasons, the decision of the Court of Appeals is affirmed in part and reversed in part. We remand to the trial court for further proceedings.

---

[2] KY. CONST. § 10.

[3] Kentucky Rules of Evidence.

# I. FACTS AND PROCEDURAL HISTORY

Maurice Gasaway, a parolee under active supervision, was employed at Knight's Mechanical in Hardin County, Kentucky. On August 30, 2018, Gasaway and two other employees were working in the sheet metal shop. At some point, one of Gasaway's co-workers, Austin McClanahan, noticed a small plastic bag about the size of a thumbnail on the floor. McClanahan picked up the bag just as his supervisor, Josh Bush, entered the room. Bush instructed McClanahan to place the bag on the desk in Bush's office. Bush covered the bag with a few sheets of paper and notified his supervisor that he suspected the bag contained illegal drugs. Bush's supervisor informed his supervisor, Jeremy Knight,[4] about the situation.

After lunch, Knight went to Bush's office and secured the bag in another container. Knight also reviewed surveillance video from the area where the bag was found. Based on the video, Knight suspected the bag fell from Gasaway's pocket when he reached in his pocket to retrieve his cellphone. Knight gave the bag to another employee, Brian Tharpe, who then contacted Detective Robert Dover of the Greater Hardin County Narcotics Task Force.

The next day, Det. Dover came to Knight's Mechanical to investigate. Det. Dover performed a field test and determined the substance contained in the bag was heroin. After speaking with Tharpe and viewing the surveillance video, Det. Dover also suspected Gasaway of possessing the heroin. Det. Dover

---

[4] Jeremy Knight's father, John Knight, is the owner of Knight's Mechanical.

3

and two other officers confronted Gasaway inside the workplace. Gasaway denied possessing the heroin. Det. Dover then handcuffed and Mirandized[5] Gasaway before leading him outside.

Once outside the building, Gasaway realized parole officers were on the scene. At this point, Gasaway launched into a sustained, vulgar tirade directed at Det. Dover. Det. Dover then placed Gasaway in the back of a police cruiser. Det. Dover searched Gasaway's person, but did not discover any incriminating evidence. However, Det. Dover retrieved a key fob from the search of Gasaway's person.

The key fob opened a truck in the parking lot. Det. Dover ascertained the truck was registered to Gasaway's wife and that Gasaway usually drove the truck to work. Det. Dover requested consent to search the truck, which Gasaway refused. Apparently, the parole officers commenced the search of the truck and Det. Dover subsequently participated. In the console, Det. Dover discovered two bags of marijuana and a pill which Det. Dover initially believed to contain ecstasy, but was later determined to contain methamphetamine. He also discovered a few marijuana "roaches" in a cupholder ashtray with marijuana "shake" around it.[6] The search also uncovered a Whizzinator—a prosthetic penis which illegal drug users frequently use to store and pass clean urine when drug testing is required.

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] Det. Dover explained that "roaches" are marijuana cigarette butts, and "shake" is little pieces of marijuana.

4

Gasaway was charged with first-degree possession of a controlled substance, heroin; second-degree possession of a controlled substance, ecstasy[7]; and possession of marijuana in Hardin Circuit Court. By supplemental indictment, he was charged with first-degree possession of a controlled substance, methamphetamine. Gasaway filed a motion to suppress the evidence obtained from the search, which the trial court denied. Following trial, Gasaway was found guilty of possession of marijuana, not guilty of possession of methamphetamine, and the jury hung on the heroin charge.

The Commonwealth elected to retry Gasaway on the heroin charge and the jury returned a guilty verdict. His conviction for possession of heroin rested, in part, upon the evidence of methamphetamine for which he was previously acquitted and the evidence of marijuana for which he was previously convicted. The Court of Appeals affirmed the conviction. We granted discretionary review and heard oral argument on April 19, 2023.

## II.    GASAWAY'S BRIEF DOES NOT COMPLY WITH RAP 32(A)(4)

At the outset, Gasaway's opening brief to this Court does not comply with RAP[8] 32(A)(4), which requires an appellant's opening brief to "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." We have strictly mandated compliance with this rule since its inception under the prior Kentucky Rules of Civil Procedure. *Skaggs v. Assad,*

---

[7] The ecstasy charge was later dismissed.

[8] Kentucky Rules of Appellate Procedure.

5

*By & Through Assad*, 712 S.W.2d 947, 950 (Ky. 1986) (citing CR[9] 76.12(4)(c)(iv) ("It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court."). RAP 32(A)(4) does not distinguish between this Court and the Court of Appeals when prescribing the organization and contents of an appellant's opening brief. The failure of an appellant's brief to conform to the appellate rules justifies the striking of the brief under RAP 31(H)(1).

Regarding the suppression issue, Gasaway merely noted, "[t]he Court of Appeals held it was 'constrained' to conclude that Section 10 of the Kentucky Constitution would present no impediment against a warrantless and suspicionless search of a parolee or his vehicle." Gasaway then cited the Court of Appeals' opinion.[10] This statement neither indicates the fact nor the manner of preservation as contemplated by RAP 32(A)(4). It simply refers to an observation made by the Court of Appeals.

Regarding the admissibility of the methamphetamine evidence, Gasaway's brief does not contain any statement of preservation. Regarding the marijuana evidence, Gasaway simply quoted the holding of the Court of Appeals and then cited to its opinion. Again, merely quoting the decision of the Court of Appeals does not tell this Court whether the issue was preserved.

Regarding the interpretation of the surveillance video, Gasaway stated "three witnesses were permitted to testify, over objection that they could see

---

[9] Kentucky Rules of Civil Procedure.

[10] *Id.*

6

something drop from Maurice's hand on the video." However, while we are directed to the allegedly improper testimony, Gasaway failed to specify where the objection occurred. Regarding the first witness, there was a relevant objection, which was not cited and occurred over ten minutes prior to Gasaway's cite. Regarding the second witness, we were not directed to an objection, nor could we find one in the record. Regarding the third witness, we were directed to an objection, which the trial court remedied by rephrasing the Commonwealth's question and no further relief was requested.

The purpose of the preservation statement rule is to assure the reviewing court that "the issue was properly presented to the trial court, and therefore, is appropriate for . . . consideration." *Cotton v. NCAA*, 587 S.W.3d 356, 360 (Ky. App. 2019) (quoting *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012)). While this procedural rule preserves judicial resources, it also serves an important substantive purpose: the fact and manner of preservation generally determines the applicable standard of review. *Id.* Furthermore, it is neither the function nor the responsibility of this Court to scour the record to ensure an issue has been properly preserved for appellate review. *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003).

The Court of Appeals addressed each of Gasaway's claimed errors as if they were properly preserved for review.[11] Additionally, the Court of Appeals urged this Court to consider the applicability of Section 10 of the Kentucky

---

[11] We except from this statement the unpreserved issue concerning the prosecutor's statements at voir dire which is not presently before this Court.

Constitution. We note the Commonwealth has not challenged the preservation of any issues before this Court except for the adequacy of the trial court's admonition concerning the admission of the methamphetamine and marijuana evidence. Because preservation determines the appropriate standard of review, an appellate court should determine for itself whether an issue is properly preserved. We are not bound by the view of the parties.

Our review of the record indicates Gasaway's first claim of error before this Court regarding the warrantless search was partially preserved for review; his claim regarding the admissibility of the methamphetamine and marijuana evidence was properly preserved; and his claim regarding the improper interpretation of the video recording was partially preserved: Gasaway properly objected to the testimony of Jeremy Knight, but he did not properly preserve any issues regarding the testimony of Brian Tharpe and Det. Dover. Given this unusual situation, we elect to impose no sanction here and begin our analysis by clarifying the general principles of the preservation rule before turning to our review of Gasaway's claimed errors.

## A. GENERAL PRINCIPLES OF ERROR PRESERVATION

In the exercise of its inherent power, an appellate court may decide an issue that was not presented by the parties so long as the appellate court confines itself to the record. *Priestley v. Priestley*, 949 S.W.2d 594, 597 (Ky. 1997). This power derives from an appellate court's supervisory authority over

lower courts. KY. CONST. § 110(2)(a)[12]; and KY. CONST. § 111(2).[13] Appellate jurisdiction "is the power and authority to review, revise, correct or affirm the decisions of an inferior court, and, more particularly, to exercise the same judicial power which has been executed in the court of original jurisdiction." *Copley v. Craft*, 341 S.W.2d 70, 72 (Ky. 1960).[14] Additionally, KY. CONST. § 116 authorizes this Court to "to prescribe rules governing its appellate jurisdiction . . . and rules of practice and procedure for the Court of Justice." KRS[15] 21.050 codifies our appellate jurisdiction and power to establish the procedure for appellate review:

(1) A judgment, order or decree of a lower court may be reversed, modified or set aside by the Supreme Court for errors appearing in the record.

(2) The method of bringing a judgment, order or decree of a lower court to the Supreme Court for review shall be established by Supreme Court rule. The procedures for appellate review shall be established by the Rules of Civil Procedure, Rules of

---

[12] KY. CONST. § 110(2)(a) provides "[t]he Supreme Court shall have appellate jurisdiction only, except it shall have the power to issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause, or as may be required to exercise control of the Court of Justice."

[13] KY. CONST. § 111(2) provides "[t]he Court of Appeals shall have appellate jurisdiction only, except that it may be authorized by rules of the Supreme Court to review directly decisions of administrative agencies of the Commonwealth, and it may issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause within its appellate jurisdiction. In all other cases, it shall exercise appellate jurisdiction as provided by law."

[14] Justice Joseph Story, sitting as Circuit Justice, explained that the appellate jurisdiction of American courts derives from the English common law writ of error rather than the "appeal" procedure used in the English courts of chancery. *See United States v. Wonson*, 28 F. Cas. 745, 750 (No. 16,750) (C.C. Mass. 1812). The common law writ of error was limited to the trial court record while the equitable appeal permitted the retrial of factual disputes on review. *Id.*

[15] Kentucky Revised Statutes.

Criminal Procedure and other rules promulgated by the Supreme Court.

Under this authority, we generally require a party to properly preserve allegations of error at the trial court level and upon every level of appellate review. *Personnel Bd. v. Heck*, 725 S.W.2d 13, 18 (Ky. App. 1986).[16] The rationale for the preservation rule is that "a court or quasi-judicial body may not be found to be in error where it has not been given an opportunity to (1) rule on the issue or (2) correct any alleged error." *Id.* Beyond the order and efficiency imposed by the preservation requirement, the rule ensures the essential fairness of appellate proceedings by preventing a party from being unfairly surprised by a question upon which he had no prior opportunity to develop evidence and argument. *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). We would hasten to add the consistent enforcement of the preservation rule promotes the equal application of our own decision-making authority.

While the preservation rule has been universally applied in American law, many courts, including this Court, have used imprecise language to delineate its contours. *See Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004). Strictly speaking, a party preserves "[a]llegations of error . . . for appellate review." RCr 10.12; *see also* KRE 103(a), (e). In a criminal case, an allegation of error is properly preserved when

---

[16] There are certain situations, inapplicable here, where a party may raise an issue before this Court that was not raised before the Court of Appeals. *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006). This Court will consider such an issue when: (1) the party brought to the attention of the trial court; (2) the party was defending the trial court's ruling on direct appeal; and (3) the party included the issue in the motion for discretionary review. *Id.*

a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which that party desires the court to take or any objection to the action of the court, and on request of the court, the grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice that party.

RCr 9.22. Formal exceptions, as previously required under the former Criminal Code of Practice, are unnecessary and appellate courts do not demand the recitation of shibboleths before a preserved allegation of error will be considered. *Id.*; *Brewer v. Commonwealth*, 478 S.W.3d 363, 368 n.2 (Ky. 2015). However, while the form of the objection does not control, the fact that an issue was made known to the trial court is paramount: even if a trial court lacks authority to grant immediate relief, such as the power to overrule binding precedent, neither our criminal rules nor our caselaw supports a futility exception to the preservation requirement.[17] *See Greer v. United States*, 141 S.Ct. 2090, 2099 (2021).

This Court has long held that "appeals are taken from judgments, not from unfavorable rulings as such." *Brown v. Barkley*, 628 S.W.2d 616, 618 (Ky. 1982). When confronted with a claim of lower court error, appellate courts "review issues, not arguments." *Brewer*, 478 S.W.3d at 368 n.2. An "issue" is legally defined as "[a] point in dispute between two or more parties." *Issue*,

---

[17] We recognize our decisions applying a futility exception to exhaustion requirements in appeals involving judicial review from administrative decisions. *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 470 (Ky. 2004). This exception is based on an administrative body's lack of authority to rule upon the constitutionality of a statute. *Id.* Such considerations are inapplicable to ordinary judicial proceedings. *City of Louisville v. Coalter*, 171 Ky. 633, 188 S.W. 853, 854 (1916)("the circuit court may first pass on the constitutionality of the statute if the question is raised in that court.).

11

*Black's Law Dictionary* (11th ed. 2019). For the purposes of appeal, "an issue may take the form of a separate and discrete question of law or fact, or a combination of both." *Id.* By contrast, "argument" is defined as "[a] statement that attempts to persuade by setting forth reasons why something is true or untrue, right or wrong, better or worse, etc.; esp., the remarks of counsel in analyzing and pointing out or repudiating a desired inference, made for the assistance of a decision-maker." *Argument, Black's Law Dictionary* (11th ed. 2019).

Allegations of error (also known as issues, claims, or questions) are supported by arguments. *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992). "Once a . . . claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Id.* Indeed, "[a] litigant seeking review in this Court of a claim *properly raised in the lower courts* thus generally possesses the ability to frame the question to be decided in any way he chooses, without being limited to the manner in which the question was framed below." *Id.* at 535 (emphasis added). Indeed, "appellate review. . . is to be conducted in light of all relevant precedents, not simply those cited to, or discovered by" the trial court. *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

However, when a party fails to raise an issue or otherwise preserve an allegation of error for review, the issue is forfeited. *United States v. Olano*, 507 U.S. 725, 731 (1993) ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in

12

criminal as well as civil cases by the failure to make timely assertion of the

right before a tribunal having jurisdiction to determine it.") (cleaned up).

Again, while many courts, including this Court, have justified the refusal to

consider unpreserved errors under a waiver theory, the proper basis is

forfeiture. *Kontrick*, 540 U.S. at 458 n.13. "Although jurists often use the

words interchangeably, forfeiture is the failure to make the timely assertion of a

right, waiver is the intentional relinquishment or abandonment of a known

right." *Id.* (internal quotations omitted) (cleaned up). The valid waiver of a

known right precludes appellate review while a forfeited claim of error may be

reviewed for palpable error. *See Olano*, 507 U.S. at 733.

In summation, we echo the wisdom of Justice Palmore on the necessity

of respecting the rules of procedure:

> In the argument of this and other recent criminal appeals we detect what appears to be a failure to appreciate the importance of and necessity for procedural regularity in the conduct of trials. Substantive rights, even of constitutional magnitude, do not transcend procedural rules, because without such rules those rights would smother in chaos and could not survive. There is a simple and easy procedural avenue for the enforcement and protection of every right and principle of substantive law at an appropriate time and point during the course of any litigation, civil or criminal. That is not to say that form may be exalted over substance, because procedural requirements generally do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated. Without them every trial would end in a shipwreck.

*Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977). Like other

procedural rules, the preservation requirement serves the orderly

administration of justice. It cannot be said to elevate form over substance or

13

otherwise unfairly cut off the rights of litigants. Palpable error review under RCr 10.26 and other exceptions[18] exist to prevent manifest injustice in the event a party fails to preserve an alleged error. We implore appellate litigants to scrupulously adhere to the rules of procedure for the sake of their own cause and to ensure the orderly disposition of court proceedings. We now turn to Gasaway's claims of error on the merits.

### III.   SEARCH OF TRUCK WAS CONSTITUTIONALLY PERMISSIBLE

For his first claim of error, Gasaway argues the warrantless search of his truck violated Section 10 of the Kentucky Constitution. He specifically urges this Court to interpret Section 10 to provide greater protection against unreasonable searches and seizures than the Fourth Amendment. Gasaway further asserts this Court's decision in *Bratcher* erroneously applied federal precedent. 424 S.W.3d at 411.

At this time, we will not consider whether Section 10 provides greater protection than the Fourth Amendment because the issue was not properly preserved for review. We further conclude the trial court erred by denying the motion to suppress under the automobile exception to the warrant requirement under the Fourth Amendment. Additionally, the Commonwealth's reliance on the search incident to arrest exception is without merit. Moreover, we agree

---

[18] For example, subject-matter jurisdiction, incomplete jury verdicts, and sentencing errors may be considered for the first time on appeal. *Privett v. Clendenin*, 52 S.W.3d 530, 532 (Ky. 2001) (subject-matter jurisdiction); *Smith v. Crenshaw*, 344 S.W.2d 393, 395 (Ky. 1961) (incomplete jury verdicts); and *Gaither v. Commonwealth*, 963 S.W.2d 621, 622 (Ky. 1997) (sentencing errors).

that our decision in *Bratcher* was wrongly decided. Nevertheless, the search of the truck was constitutionally permissible under the Fourth Amendment. Therefore, we conclude the Court of Appeals properly affirmed the trial court's denial of the motion to suppress, albeit for different reasons.

### A. SCOPE OF SECTION 10 IS NOT PROPERLY BEFORE THIS COURT

Our review of the record indicates the issue of whether Section 10 of the Kentucky Constitution provides greater protection than the Fourth Amendment against unreasonable searches and seizures was not raised before the trial court. The sole issue before the trial court involved the question of whether the warrantless search of Gasaway's truck was reasonable under the Fourth Amendment. These are discrete legal issues. Further, Gasaway did not raise the issue of whether Section 10 provides greater protection than the Fourth Amendment before the Court of Appeals.[19]

While the Court of Appeals encouraged this Court to consider the application to Section 10 to parolees, this action does not necessarily preserve the issue for further review by this Court. "Courts are not required to decide constitutional questions whenever a party makes the suggestion." *Priestley*, 949 S.W.2d at 599. This principle applies equally to suggestions made by lower courts because "[c]onstitutional adjudication should be reserved for those

---

[19] We note Gasaway cited Section 10 in his brief before the Court of Appeals for the proposition "[s]ection 10 of the Kentucky Constitution also protects citizens from unreasonable searches and seizures by government agents." Gasaway's opening Court of Appeals brief at 4. This was the sole reference in Gasaway's brief to Section 10.

cases in which the issue is well-defined and advanced by parties substantially affected by the controversy." *Id.* (emphasis added). While we acknowledge the Court of Appeals' invitation to consider this important issue,[20] it is not properly before us because Gasaway failed to raise the question before the trial court. As such, Gasaway has failed to demonstrate a sufficient basis for this Court to reconsider our precedent concerning the scope of Section 10. Therefore, we decline to address the issue.

### B. STANDARD OF REVIEW FOR WARRANTLESS SEARCH

The propriety of the trial court's denial of Gasaway's motion to suppress on Fourth Amendment grounds is properly before this Court as the issue was raised and decided by the lower courts. The trial court found the warrantless search was justified under the automobile exception and, alternatively, under our decision in *Bratcher*, which Gasaway now asks this Court to overrule.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." All warrantless searches are unreasonable, per se, under the Fourth Amendment unless an established exception applies. *Commonwealth v. Hatcher*, 199 S.W.3d 124, 126 (Ky. 2006). "The Commonwealth bears the burden of establishing the constitutional validity" of a warrantless search.

---

[20] We adhere to the principle that "[a]ny court, though required to follow precedent established by a higher court, can set forth the reasons why, in its judgment, the established precedent should be overruled but cannot, on its own, overrule the established precedent set by a higher court." *Special Fund v. Francis*, 708 S.W.2d 641, 642 (Ky. 1986).

*Commonwealth v. Conner*, 636 S.W.3d 464, 471 (Ky. 2021). Each of the exceptions to the warrant requirement is "narrow and well-delineated." *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999). In other words, each exception is conceptually distinct. *Id.* Therefore, the Commonwealth must satisfy every element of the claimed exception. *Id.*; *Hatcher*, 199 S.W.3d at 126.

The standard of review from the denial of a motion to suppress evidence depends on whether the search or seizure was conducted pursuant to a warrant. *Commonwealth v. Pride*, 302 S.W.3d 43, 48 (Ky. 2010). Because the present appeal involves a warrantless search, we review the trial court's: (1) findings of fact for clear error and (2) determinations of reasonable suspicion and probable cause de novo. *Id.* at 49 (citing *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996)). The heightened de novo standard of review for probable cause reflects this Court's "preference for searches pursuant to a warrant." *Id.* at 48. Our review of the facts is generally limited to the evidence presented at the suppression hearing. *Conner*, 636 S.W.3d at 472 ("we use the facts elicited during [the suppression hearing] as the basis for our analysis."). We note the Commonwealth, throughout its response brief, refers to evidence presented at trial to support the trial court's denial of the motion to suppress. While the evidence may have overlapped, the Commonwealth concedes there were "some variations." We have limited to our review of this issue to the evidence presented at the suppression hearing.

Additionally, it is a fundamental precept of appellate review that "[w]hen a judgment is based upon alternative grounds, the judgment must be affirmed

17

on appeal unless both grounds are erroneous." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). We have applied this rule in the Fourth Amendment context by refusing to consider alternative bases to justify the denial of a suppression motion after first determining the search at issue was supported by probable cause. *See Pride*, 302 S.W.3d at 51. Accordingly, with the foregoing standards in mind, we examine the alternative grounds for the denial of the motion to suppress.

## C. SEARCH WAS NOT JUSTIFIED UNDER AUTOMOBILE EXCEPTION FOR LACK OF PROBABLE CAUSE

The trial court first determined the warrantless search of the vehicle was proper under the automobile exception. The automobile exception to the warrant requirement applies when the vehicle is readily mobile and probable cause exists to believe evidence of criminal activity may be contained in the vehicle. *Hedgepath v. Commonwealth*, 441 S.W.3d 119, 128 (Ky. 2014). A vehicle is considered readily mobile even if it has been secured by law enforcement or there is little to no risk a suspect or his accomplices could access the vehicle. *Id.* An independent finding of exigent circumstances is not required under the automobile exception because the exception is based upon "reduced expectations of privacy" in vehicles. *Id.* The automobile exception may be invoked "[w]hen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise." *California v. Carney*, 471 U.S. 386, 392 (1985).

18

Clearly, Gasaway's truck was readily mobile and found in a non-residential location. The question is whether probable cause existed at the time the truck was searched. We conclude it did not. Specifically, the Commonwealth failed to establish an objective nexus between Gasaway's truck and the information known to the officers at the time of the search.

The impossibility of precisely defining probable cause has often been noted by appellate courts. *Ornelas*, 517 U.S. at 695. Reasonable suspicion and probable cause are "commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (*citing Illinois v. Gates*, 462 U.S. 213, 231 (1983)). The Supreme Court described "probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. *Id.* at 696. In other words, "[t]here must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). Probable cause is a "fluid concept," rather than "a finely-tuned standard comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence." *Ornelas*, 517 U.S. at 696 (quotation omitted) (cleaned up). Direct evidence of probable cause is not strictly required and reviewing courts afford "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Conner*, 636 S.W.3d at 471 (citation omitted).

The trial court determined probable cause existed based on three specific findings of fact: (1) Gasaway drove the same vehicle to work on the previous day when he was filmed on video having allegedly dropped the heroin; (2) Gasaway was on parole for prior felony controlled substances cases, including trafficking; and (3) Det. Dover observed marijuana roaches and shake in plain view from outside the vehicle.

As in several other recent decisions, the trial court's findings of fact are contradicted by the record on a point essential to the court's decision. *Conner*, 636 S.W.3d at 472; *Commonwealth v. Clayborne*, 635 S.W.3d 818, 823 (Ky. 2021); and *Turley v. Commonwealth*, 399 S.W.3d 412, 420 (Ky. 2013). Specifically, the trial court's finding regarding Det. Dover's observation of marijuana roaches and shake in plain view was clearly erroneous. On cross-examination at the suppression hearing, Det. Dover admitted the roaches and shake were not in plain view:

> **Defense Counsel**: You also found in the ashtray several roaches, is that correct?
>
> **Det. Dover**: It was a cup ashtray, yes.
>
> . . .
>
> **Counsel**: Now, with regard to the marijuana and the pill, which you believed to be ecstasy, was in the console of the truck?
>
> **Det. Dover**: Yes.
>
> **Counsel**: And therefore, they weren't in plain view, were they?
>
> **Det. Dover**: Uh no, there wasn't. . .
>
> **Counsel**: And the roaches that we are talking about, they were not in plain view were they?

20

> **Det. Dover**: They were in the ashtray, the ashtray was in plain view, but there was a bunch of shake next to the ashtray, little pieces of marijuana that was next to that.
>
> **Counsel**: But you didn't see those, did you, when you looked in the window?
>
> **Det. Dover**: If you look in the window, I believe, well, I don't know.
>
> **Counsel**: Ok. You don't remember, is that correct?
>
> **Det. Dover**: That's correct.

The trial court also directly questioned Det. Dover concerning his observation of the ashtray and the marijuana roaches. Det. Dover described the ashtray as a cup with a lid on it that fit into the cupholder between the driver's seat and the front passenger seat. The trial court further inquired whether the ashtray was easily observable from the outside of the vehicle. Det. Dover responded, "I couldn't observe the roaches, but the ashtray, yes." Based on this record, we cannot accept the finding that marijuana was observed in plain view.

While the trial court's remaining factual findings are supported by substantial evidence, we cannot conclude they amount to probable cause for a warrantless search. The decision of the Eighth Circuit Court of Appeals in *United States v. Hogan*, 25 F.3d 690 (8th Cir. 1994), is instructive.[21]

In *Hogan*, a confidential informant reported to federal Drug Enforcement Administration (DEA) agents that the defendant was trafficking

---

[21] We cite this federal decision only as a persuasive example, keeping in mind that one court's determination of probable cause "will seldom be a useful precedent for another" given the fact-intensive analysis. *Ornelas*, 517 U.S. at 698 (citation omitted).

methamphetamine and marijuana at the Chrysler plant where the defendant worked. *Id.* at 691. The informant named two employees who had told the informant that the defendant had supplied them with drugs for a long period of time. *Id.* The informant also claimed he had personally observed the defendant engage in three hand-to-hand drug transactions. *Id.* According to the informant, the defendant only drove a white Dodge truck to and from work at the plant. *Id.* The informant predicted that the defendant would be bringing methamphetamine to the plant when he arrived for his shift the next day at 3:00 p.m. *Id.*

Based on this information, the agents obtained a warrant to search the defendant's truck and residence. *Id.* On the next day, the agents surveilled the defendant's residence and observed the defendant leave his residence in a blue Oldsmobile car. *Id.* at 692. After the defendant travelled between 3-5 miles from his residence, a state trooper, who was assisting the investigation, stopped the defendant's car on the road. *Id.*

When the DEA agents arrived at the scene, an agent told the defendant he had a warrant to search the defendant's residence and truck. *Id.* The agent requested permission to search the defendant's car, which the defendant refused. *Id.* At this point, the agent impounded the car until he could obtain a warrant. *Id.* The agent then handcuffed the defendant and placed the defendant in the agent's car before returning to the residence. *Id.* Another agent drove the defendant's car back to the residence. *Id.*

22

After searching the residence and truck, the agents discovered a small amount of marijuana, two scales, weapons, a carton of freezer bags, and $5,600 in cash. *Id.* The state trooper then investigated the outside of the car with a drug detection dog. *Id.* The dog alerted at the trunk of the car. *Id.* The agents then formally arrested the defendant for possession of the marijuana found in the house. *Id.* An agent drove the car to the DEA office until a warrant could be obtained. *Id.* After obtaining a warrant, the subsequent search of the car revealed a half pound of marijuana and a quarter pound of methamphetamine. *Id.*

The defendant was charged with possession with intent to distribute marijuana and methamphetamine. *Id.* at 691. The defendant moved to suppress the evidence obtained from the search, which the trial court denied. *Id.* The defendant entered a conditional guilty plea. *Id.* On direct appeal, the Eighth Circuit reversed. *Id.*

The government argued the initial seizure of the car on the road was justified, and further argued the agents could have properly searched the car at that time under the automobile exception. *Id.* at 692. The Court rejected this argument after concluding the agents lacked probable cause to stop and seize the defendant's vehicle on the road. *Id.* at 693. The information provided to the agents indicated the defendant only used his truck to the transport drugs. *Id.* Additionally, the agents did not possess sufficient information to determine that the defendant was traveling to the plant when the car was stopped and seized because of the time of day. *Id.* On these facts, the Court determined the

23

agents merely possessed "a hunch that the drugs from the house or truck"

would be found in the defendant's car. *Id.* A hunch does not rise to the level of

probable cause. *Id.*

In the present appeal, we acknowledge Gasaway's criminal history, as

known by Det. Dover and found by the trial court, is a legitimate factor in the

probable cause analysis. *See Risby v. Commonwealth,* 284 S.W.2d 686, 687

(Ky. 1955). However, a person's criminal history, taken alone, does not amount

to probable cause to conduct a warrantless search. *Id.* Moreover, the fact that

Gasaway drove the same vehicle the day before, even when considered in

tandem with Gasaway's criminal history, does not establish an objective nexus

between the vehicle and illegal activity. There was no evidence that Gasaway

was involved in continuous or on-going drug activity or trafficking at the

workplace.

The heroin was discovered inside the workplace on the day prior to the

search. It was not discovered in Gasaway's vehicle. Gasaway was confronted

and arrested inside the workplace. The search of Gasaway's person prior to the

search of the vehicle did not reveal any incriminating evidence. Further,

Gasaway's vulgar post-arrest tirade carries little weight in our analysis.

Indeed, this fact was apparently so insignificant that trial court did not make

any reference to it in its findings. Additionally, any inference linking the

suspected possession of heroin to Gasaway's truck is especially tenuous given

the lack of any concrete evidence showing the truck was used to transport or

conceal any additional quantities of illegal drugs. Det. Dover testified the

24

reason he searched Gasaway's truck was simply that he "believed there [were] other drugs" located there. Given the lack of objective corroborating evidence linking Gasaway's truck to the heroin found in the workplace, we conclude Det. Dover's belief was based on suspicion, not probable cause. Therefore, the trial court's reliance upon the automobile exception was in error.

Before turning to the trial court's second ground for denying the motion to suppress, we must consider the Commonwealth's intervening claim that the search was justified as a search incident to arrest.

### D. SEARCH WAS NOT JUSTIFIED UNDER INCIDENT TO ARREST EXCEPTION

The Commonwealth insists, as it did before the Court of Appeals, that the warrantless search was justified under the incident to arrest exception. This claim was not directly presented to the trial court.

The Commonwealth asserts that we may consider the issue because our caselaw holds that an appellate court may affirm a lower court on any basis supported by the record. *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009). While the Commonwealth's assertion is correct as a general matter, the cited rule presumes the alternative basis of affirmance was properly raised before the trial court. *Commonwealth v. Andrews*, 448 S.W.3d 773, 776 n.3 (Ky. 2014). When the prosecution fails to raise a claimed exception to the warrant requirement before the trial court, the Supreme Court has explicitly stated

> The Government . . . may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by

25

those courts, or when it has failed to raise such questions in a timely fashion during the litigation.

*Steagald v. United States*, 451 U.S. 204, 209 (1981).

The Commonwealth implicitly disclaimed reliance upon the search incident to arrest exception in its memorandum filed after the suppression hearing:

> [t]he search of the defendant's vehicle comes within two exceptions to the warrant requirement. First, the search was proper under the automobile exception. Second, the search was proper as the defendant was on parole and therefore could be subjected to a warrantless and suspicionless search.

However, while the Commonwealth did not initially claim the search incident to arrest exception justified the search, we note that Gasaway asserted at the suppression hearing that the search was improper under *Arizona v. Gant*, 556 U.S. 332 (2009), a decision dealing with the search incident to arrest exception. In response, the Commonwealth stated:

> Judge, I appreciate [defense counsel] citing *Gant*. I'm a big *Gant* fan. *Gant* did not change. . . it changed you can't search a vehicle search [sic] incident to arrest carte blanche. Which used to be the rule. Arrest somebody, search the vehicle. What *Gant* came out and said was unless that person has access to that vehicle you can no longer search it for your safety. If they are detained, you have to get a warrant unless, you have probable cause because a vehicle in and of itself, there is, it is well-established, an automobile exception. It is exigent circumstances in and of itself and that if you have probable cause to believe that the vehicle contains contraband then you can still search the vehicle, you don't need a warrant, it is exigent circumstances, it doesn't matter if the person is detained. . . There are cases, *Commonwealth v. Elliott*, *Hedgepath*, as well as *Owens v. Commonwealth*, all post-*Gant* cases that say this was proper conduct.

The trial court ultimately limited its ruling to the automobile exception and, alternatively, upon Gasaway's status as a parolee.

The automobile exception, as set forth above in *Hedgepath*, 441 S.W.3d at 128, is distinct from what this Court has previously described as "*Gant's* alternative rule" in the search incident to arrest context. *See Rose v. Commonwealth*, 322 S.W.3d 76, 80 (Ky. 2010). *Gant's* alternative rule is "that an officer may search a vehicle even when the arrestee is secured if he has a reasonable suspicion that the vehicle harbors evidence of the *crime of arrest.*" *Id.* Regardless of how the claim was labeled, it is clear the Commonwealth solely and substantively relied upon the automobile exception rather than the search incident to arrest exception at the trial court level.

From the argument at the suppression hearing, it appears the parties conflated the automobile exception and the search incident to arrest exception to some extent. We are dubious the search incident to arrest claim was properly raised before the trial court. Regardless, any claim concerning the search incident to arrest exception may be swiftly rejected because Det. Dover plainly testified that he searched Gasaway's truck looking for "other drugs." This statement indicates the motive for the warrantless search was generally investigative, rather than a specific search for evidence of the crime of arrest, possession of heroin.

### E. *BRATCHER* WAS WRONGLY DECIDED

As its second, alternative basis for denying Gasaway's motion to suppress, the trial court ruled that Gasaway was subject to a warrantless and

27

suspicionless search by virtue of his status as a parolee under our decision in *Bratcher*. Gasaway urges this Court to reconsider *Bratcher*'s "unduly expansive interpretation" of the Supreme Court's decision in *Samson v. California*, 547 U.S. 843 (2006). We agree that *Bratcher* was wrongly decided.

### a. DEVELOPMENT OF FOURTH AMENDMENT JURISPRUDENCE RELATING TO PROBATIONERS AND PAROLEES

Before examining the question of whether *Bratcher* was wrongly decided, we must place the decision in proper context by recounting the development of Fourth Amendment jurisprudence relating to probationers and parolees.

### i. *Griffin v. Wisconsin*, 483 U.S. 868 (1987)

In *Griffin*, 483 U.S. at 873, the Supreme Court held the warrantless search of a probationer's "home satisfied the demands of the Fourth Amendment because *it was carried out pursuant to a regulation that itself satisfies* the Fourth Amendment's reasonableness requirement under well-established principles." (Emphasis added). To properly frame the decision, we will summarize the facts before summarizing the legal analysis.

The probationer was subject to a Wisconsin statute that subjects probationers to conditions set by the sentencing court and rules and regulations promulgated by the Department of Health and Social Services. *Id.* at 870. The Department established a regulation that permitted any probation officer to search a probationer's home without a warrant upon approval by the officer's supervisor and reasonable suspicion the probationer's home contains contraband. *Id.* at 870-71. The regulation also set forth various factors that a

28

probation officer should consider in determining whether reasonable suspicion for a warrantless search exists. *Id.* at 871. Notably, the statute at issue was generally applicable and the regulation was established after the court order placing the probationer on probation. *Id.* Additionally, under a separate regulation, a probationer's refusal to consent to a search was deemed to constitute an independent probation violation. *Id.*

A probation officer received information that the probationer possessed firearms in his residence in violation of the conditions of probation. *Id.* Following a search, the probation officer discovered a handgun. *Id.* The probationer was charged with possession of a firearm by a convicted felon. *Id.* He filed a motion to suppress the evidence obtained as a result of the warrantless search, which the trial court denied. *Id.* The probationer was convicted following a jury trial. *Id.* His conviction was affirmed on appeal. *Id.* The Supreme Court granted certiorari to "to consider whether this search violated the Fourth Amendment." *Id.* at 870.

The Supreme Court affirmed the conviction. *Id.* at 872. The Supreme Court commenced its analysis by recognizing that "[a] probationer's home, *like anyone else's*, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Id.* at 873 (emphasis added). However, the "special needs" exception allows for a warrantless search when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring)). The special needs exception permits

29

governmental employers to conduct warrantless searches of employees' offices and desks without probable cause. *Id.* Additionally, the exception allows school officials to conduct warrantless searches of certain student property without probable cause. *Id.*

In the context of probationers, the Supreme Court held, "that in certain circumstances government investigators conducting searches *pursuant to a regulatory scheme* need not adhere to the usual warrant or probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Id.* (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967)) (emphasis added). Application of the special needs exception to probationers was justified because "probation is a form of criminal sanction imposed. . . after verdict, finding, or plea of guilty." *Id.* at 874 (citation omitted). In other words, "[p]robation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Id.* "To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only. . . conditional liberty properly dependent on observance of special [probation] restrictions.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)) (alteration in original).

Restrictions upon the liberty of probationers are imposed "to assure that the probation serves as a period of genuine rehabilitation and that the

30

community is not harmed by the probationer's being at large." *Id.* at 875.

"These same goals require and justify the exercise of supervision to assure that

the restrictions are in fact observed." *Id.* As such, "[s]upervision, then, is a

'special need' of the State permitting a degree of impingement upon privacy

that would not be constitutional if applied to the public at large." *Id.*

Ultimately, the Supreme Court concluded "[t]he search of [the probationer's]

residence was 'reasonable' within the meaning of the Fourth Amendment

because it was conducted pursuant to a valid regulation governing

probationers." *Id.* at 880. The validity and meaning of the probation regulation

is to be fixed by state law. *Id.* at 875.

### ii. *United States v. Knights*, 534 U.S. 112 (2001)

In *Knights*, 534 U.S. at 122, the Supreme Court held that the official

purpose of the search of a probationer's residence is immaterial under the

Fourth Amendment if the search was "supported by reasonable suspicion and

authorized by a condition of probation." Again, we will briefly recount the facts

before summarizing the legal analysis.

A probationer agreed to a condition of probation that provided for a

warrantless search of the probationer's residence at any time without cause.

*Id.* at 114. A police detective suspected the probationer and another individual

were involved in a series of arsons. *Id.* A week before the latest arson, a

sheriff's deputy stopped the probationer and another individual on the road

near the scene and observed gasoline and pipes in the bed of the truck. *Id.* at

115. Subsequently, the detective began surveillance of the probationer's

31

residence and observed the other individual exiting the residence what appeared to be pipe bombs. *Id.* The individual walked across the street to the banks of a river. *Id.* The detective heard a splash and observed the individual return without the items. *Id.* The individual then drove away in his truck. *Id.*

After the individual parked the truck in a driveway, the detective observed a Molotov cocktail and other explosive materials in the bed of the truck. *Id.* The detective then conducted a search of the probationer's residence. *Id.* The detective was aware of the probationer's status and believed he did not require a warrant. *Id.* The search of the probationer's residence revealed several incriminating items. *Id.*

The probationer was charged in federal court with conspiracy to commit arson and other charges. *Id.* at 116. He moved to suppress the evidence of the search, which the district court granted. *Id.* Although the district court concluded the officers had reasonable suspicion, the court nevertheless suppressed the evidence because the purpose of the search was investigatory rather than probationary. *Id.* The government filed an interlocutory appeal. *Id.* The Ninth Circuit Court of Appeals affirmed the suppression of the evidence. *Id.* The Supreme Court granted certiorari and reversed. *Id.* at 122.

At the outset of its analysis, the Supreme Court noted that California law rejected any distinction between probationary and investigative searches when considering the warrantless search of a probationer. *Id.* at 116. Nevertheless, the probationer argued that the *Griffin* decision limited the special needs

32

exception to probationary rather than investigative searches. *Id.* at 117. The Supreme Court rejected the "dubious logic" of the probationer's argument. *Id.*

The Supreme Court declined to rest its decision of the probationer's agreement to the conditions of his probation or even under the special needs exception itself. *Id.* at 118. Rather, the Supreme Court examined the reasonableness of the search under the familiar totality of the circumstances standard, "with the probation search condition being a salient circumstance." *Id.* The test for reasonableness assesses "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 119. A search condition attendant to probation "informs both sides of that balance." *Id.* The Court explained:

> It was reasonable to conclude that the search condition would further the two primary goals of probation-rehabilitation and protecting society from future criminal violations. The probation order clearly expressed the search condition and Knights was unambiguously informed of it. *The probation condition thus significantly diminished* Knights' reasonable expectation of privacy.

*Id.* at 119-20 (footnotes omitted) (emphasis added).

The Court held "that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house." *Id.* at 121. "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* The

33

Supreme Court expressly left open the question of "whether the probation condition so diminished, or completely eliminated, [the probationer's] reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n.6.

### iii. *Samson v. California*, 547 U.S. 843 (2006)

In *Samson*, 547 U.S. at 846, the Supreme Court held that a warrantless search conducted *pursuant to a state statute* requiring parolees to consent to warrantless and suspicionless searches at any time did not violate the Fourth Amendment. Before summarizing the legal analysis of the decision, we will briefly recount the facts.

A police officer observed the parolee was walking down the street with a woman and child. *Id.* The officer was aware of the parolee's status and believed there was an outstanding warrant for a parole violation. *Id.* The officer confronted the parolee and asked if there was an outstanding warrant. *Id.* The parolee replied that he was in good standing with his parole officer. *Id.* The officer confirmed there was no outstanding warrant. *Id.* Nevertheless, the officer searched the parolee's person based solely on the parolee's status and discovered methamphetamine. *Id.* at 847.

The parolee was charged with possession of methamphetamine. *Id.* He moved to suppress the evidence obtained from the warrantless search, which the trial court denied. *Id.* The parolee was convicted. *Id.* The California Court

34

of Appeal affirmed the denial of the suppression motion. *Id.* The Supreme

Court granted to certiorari

> to answer a variation of the question this Court left open in *United States v. Knights*, 534 U.S. 112, 120, n. 6, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)—*whether a condition of release* can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment. Answering that question in the affirmative today, we affirm the judgment of the California Court of Appeal.

*Id.* at 847 (footnote omitted) (emphasis added).

The Supreme Court noted the "Fourth Amendment imposes no irreducible requirement" of individualized suspicion. *Id.* at 855 n.4 (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 561 (1976)). The Supreme Court examined the reasonableness of the search under the balancing test set forth in *Knights*. *Id.* at 848 (citing *Knights*, 534 U.S. at 118). Regarding the defendant's reasonable expectation of privacy, the Supreme Court recognized "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. In addition, California law imposed substantial restrictions on parolees such that "[t]he extent and reach of these conditions clearly demonstrate that parolees . . . have severely diminished expectations of privacy by virtue of their status alone." *Id.* at 852. The Supreme Court placed substantial weight on the fact that the search condition was "clearly expressed" to the parolee and he was "unambiguously" aware of it. *Id.* In sum, these circumstances indicated the

35

parolee "did not have an expectation of privacy that society would recognize as legitimate." *Id.*

Regarding the government's interest, the Supreme Court determined "a State has an overwhelming interest in supervising parolees because parolees. . . are more likely to commit future criminal offenses." *Id.* at 853 (quoting *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 (1998)). Specifically, "California's ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society." *Id.* at 854. The Supreme Court rejected the argument that California's imposition of suspicionless searches as a condition of parole was constitutionally infirm because other jurisdictions required reasonable suspicion to search a parolee:

> Petitioner observes that the majority of States and the Federal Government have been able to further similar interests in reducing recidivism and promoting reintegration, despite having systems that permit parolee searches based upon some level of suspicion. Thus, petitioner contends, California's system is constitutionally defective by comparison. Petitioner's reliance on the practices of jurisdictions other than California, however, is misplaced. *That some States and the Federal Government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable*, taking into account a parolee's substantially diminished expectation of privacy.

*Id.* at 855 (emphasis added). Likewise, the Supreme Court determined California law, rather than the Fourth Amendment, provided sufficient safeguards to prevent abusive or harassing searches. *Id.* at 856. Therefore,

the Supreme Court concluded "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857.

### b. *BRATCHER* MISINTERPRETED *SAMSON*

With the foregoing legal standards in mind, we will now examine the soundness of our holding in *Bratcher*. In *Bratcher*, this Court applied *Samson* to hold that the Fourth Amendment does not prohibit the warrantless and suspicionless search of parolees despite the policy of the Kentucky Department of Corrections requiring parole officers to have reasonable suspicion before conducting a warrantless search upon a parolee. 424 S.W.3d at 415. Before turning to our analysis, we will briefly summarize the facts.

Police suspected a parolee of manufacturing methamphetamine. *Id.* at 412. An informant reported to a police officer that the parolee possessed items used to manufacture methamphetamine at the parolee's residence and was planning to "do a cook." *Id.* Based on this information and the police officer's personal knowledge of the parolee's criminal history, the police officer went to the parolee's residence and requested permission to search the premises. *Id.* The parolee refused to the police officer's request for consent. *Id.*

The police officer then contacted the parolee's parole officer by phone. *Id.* He informed the parole officer that he suspected the parolee was involved in illegal activity and that the parolee had refused his request for consent to search the residence. *Id.* The police officer then permitted the parolee to speak to his parole officer. *Id.* The parole officer reminded the parolee of his

obligation to allow parole officers to search his residence and that the parolee should consent to the search.  *Id.*  The defendant then consented.  *Id.*

The police officer along with a different parole officer subsequently searched the residence and "discovered various items used for the manufacture of methamphetamine."  *Id.* at 412-13.  The parolee was charged with manufacturing methamphetamine and being a first-degree persistent felony offender.  Following the denial of his motion to suppress the evidence obtained from the warrantless search, the parolee entered a conditional guilty plea and was sentenced to twenty-one years' imprisonment.  *Id.* at 412.

On direct appeal, this Court affirmed.  *Id.*  At the outset, we determined the trial court properly concluded the parolee consented to the search.  *Id.* at 413.  Consent to search is a valid and independent exception to the warrant requirement.  *Id.*  Indeed, we concluded "[t]his finding alone would have been sufficient to support the legality of the warrantless search."[22]  *Id.*

Despite the sufficiency of the consent justification, this Court considered the application of the *Samson* decision because the defendant's "parole status and the constitutional standards relating thereto" were the "focus of the trial court's analysis and the focal point of the parties' arguments."  *Id.*  Specifically,

---

[22] The fact that *Bratcher* had a correct, alternative holding does not permit us to disregard an incorrect holding as dicta or otherwise allow us to simply confine the decision to its facts because alternative holdings of an appellate court are treated as binding precedent in contrast to the rule that an appellate court may affirm a trial court if either of alternative holdings are correct.  Bryan A. Garner, et. al., *The Law of Judicial Precedent* 122-23 (2016); *compare with Milby*, 580 S.W.2d at 727.

we addressed the issue "to highlight the impact of [*Samson*] on this aspect of our Fourth Amendment jurisprudence." *Id.*

We began our analysis by examining the *Knights* decision. *Id.* This Court recognized the Supreme Court held "a warrantless intrusion upon a probationer's significantly diminished privacy interests is reasonable under the Fourth Amendment only when an officer has reasonable suspicion that the probationer is engaged in criminal activity." *Id.* at 412 (quoting *Knights*, 534 U.S. at 121) (cleaned up). We recognized our decisions previously applied the reasoning of *Knights* and its reasonable suspicion standard to cases involving parolees. *Id.* at 414 (citing *Riley v. Commonwealth,* 120 S.W.3d 622 (Ky. 2003)).

This Court abandoned the reasonable suspicion requirement of *Knights*, and applied the reasoning of *Samson* because *Samson* specifically dealt with the search of a parolee rather than a probationer. *Id.* at 415. Relying upon *Samson,* we concluded

> it is immaterial whether the information available to the officers who searched Appellant's residence rose to the standard of reasonable suspicion. The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.

*Id.* We further explained that the conditions imposed on Kentucky parolees

> may be seen as more stringent than *Samson,* they do not alter the Fourth Amendment analysis. It is fundamental that by administrative rule or statute a state may impose upon its police authorities more restrictive standards than the Fourth Amendment requires. Such standards, however, cannot expand the scope of the Fourth Amendment itself. *Virginia v. Moore,* 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).

*Id.* This Court ultimately held "the Fourth Amendment presents no impediment against a warrantless and suspicionless search of a person on parole." *Id.* (citation omitted).

After careful consideration, we hold that *Bratcher* was decided in error. While this Court correctly determined the Fourth Amendment does not categorically forbid the warrantless, suspicionless search of a parolee, we incorrectly determined that the conditions of parole imposed by state law were immaterial to the analysis. *Samson* prescribed the application of the ordinary Fourth Amendment balancing test to ascertain the reasonableness of the search under the totality of the circumstances, including the conditions of parole under state law. *Samson*, 547 U.S. at 848. While the Fourth Amendment does not forbid a rule requiring parolees to submit to suspicionless searches, neither does it demand one. In *Bratcher*, we erred by failing to account for the conditions of parole.

Though the notion that state statutes and regulations impact the permissibility of a search under the Fourth Amendment seems incongruous, "[p]arolee searches are. . . an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law." *United States v. Freeman*, 479 F.3d 743, 747-48 (10th Cir. 2007). The view of the Tenth Circuit in *Freeman* prevails in the federal courts and we think it sound. *See United States v. Sharp*, 40 F.4th 749, 756 (6th Cir. 2022) ("And our sister circuits have specifically rejected the notion that *Samson* authorizes suspicionless parolee searches regardless of the search

condition or background state law.").[23]  Thus, our reliance on *Moore*, 553 U.S. 164, 171 (2008) to justify ignoring the conditions of parole and other background Kentucky law as part of the Fourth Amendment analysis was overbroad.

In *Moore*, the Supreme Court stated, "[o]ur decisions *counsel* against changing the [Fourth Amendment] calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires."  *Id.* (emphasis added).  Indeed, one of the primary purposes of the uniformity rule in the Fourth Amendment context is to avoid the situation where the actions of state and federal officers are judged by different standards.  *Id.* at 176.  There is no such danger here because federal courts account for parole conditions under state law when conducting the balancing test under *Samson*.  *Sharp*, 40 F.4th at 756.  Furthermore, the *Samson* decision itself commands consideration of state law factors when determining the reasonableness of a parolee search. 547 U.S. at 852.  In *Sharp*, the majority recognized the Supreme Court's Fourth Amendment jurisprudence has not always resulted in nationwide uniformity.  40 F.3d at 757.

Having concluded *Bratcher* was wrongly decided, we must next consider whether the decision should be preserved under the principles of stare decisis.

---

[23] We find the reasoning of the majority in *Sharp* persuasive and decline to adopt the reasoning expressed in Judge Batchelder's concurrence as urged by the Commonwealth. 40 F.4th at 758.

## F. STARE DECISIS DOES NOT REQUIRE RETENTION OF *BRATCHER*

This Court is aware of Kentucky's strong and longstanding commitment to stability in the law. *Matheny v. Commonwealth*, 191 S.W.3d 599, 622 (Ky. 2006) (Cooper, J., dissenting). A Kentucky precedent may not be overturned merely because it was wrong, but because "the principle established . . . is clearly erroneous." *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 458 (1922). Justice Vance aptly and succinctly characterized our steadfast adherence to stare decisis:

> Appellate courts should follow established precedent unless there is a compelling and urgent reason to depart therefrom which destroys or completely overshadows the policy or purpose established by the precedent.

*Schilling v. Schoenle*, 782 S.W.2d 630, 633 (Ky. 1990). Recently, this Court reaffirmed that a court should not overrule its own decisions simply because it disagrees with them: there must be some additional, special justification for doing so. *Jenkins v. Commonwealth*, 496 S.W.3d 435, 451 (Ky. 2016).

Concomitant with a high court's duty to "say what the law is," is the duty to maintain fidelity to the constitutional text as well as to maintain stability and consistency in the law. Bryan A. Garner, et al., *The Law of Judicial Precedent* 356-57 (2016) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)). Importantly, the force of stare decisis "is at its weakest when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions." *Agostini v.*

42

*Felton*, 521 U.S. 203, 235 (1997). Stare decisis does not compel us to disfigure the law or perpetuate error.

We acknowledge the direct criticism of *Bratcher* by the United States District Court for the Eastern District of Kentucky in *Jones v. Lafferty*, 173 F. Supp. 3d 493 (E.D. Ky. 2016), and the recognition of same by numerous panels of the Kentucky Court of Appeals. Additionally, we note that *Bratcher* has been cited in a leading Fourth Amendment treatise as an outlier. Wayne R. LaFave, 5 *Search & Seizure* § 10.10(c) n.116 (6th ed. 2022). Professor LaFave warned of the flattening effect of the law into general rules based upon the imprecise application of Supreme Court precedent. *Id.* ("While it would seem that a balancing based upon California's situation should not automatically convert into a general rule applicable everywhere, experience regarding similar issues suggests *Samson* may well end up being 'flattened out' into such a general rule."). Furthermore, any reliance upon the *Bratcher* decision appears to be minimal. Not least because the Department of Corrections has consistently maintained its policy requiring reasonable suspicion to justify a parolee search. *See* KDOC[24] 27-16-01.

As Justice Jackson famously declared, "we are not final because we are infallible, but we are infallible only because we are final." *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring). Indeed, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late."

---

[24] Kentucky Department of Corrections Policy.

43

*Henslee v. Union Planters Bank*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting). Because the freedom from unreasonable searches and seizures is among the most cherished liberties of our people, we cannot permit a flawed interpretation to stand. Therefore, we must overrule *Bratcher* to the extent it holds that conditions of parole are immaterial to the Fourth Amendment analysis.

### G. SEARCH OF TRUCK SUPPORTED BY REASONABLE SUSPICION

With the proper application of *Samson* in mind, we must determine whether the search of Gasaway's truck was reasonable under the totality of the circumstances. 547 U.S. at 852. This issue is properly before us based on the Commonwealth's reliance on Gasaway's parolee status and *Bratcher* before the trial court. We conclude the trial court properly denied the motion to suppress because the search was reasonable under the totality of the circumstances.

When a parolee has been charged with a crime and moves to suppress evidence obtained from a warrantless search pursuant to the Fourth Amendment, a court must determine whether the search was reasonable under the totality of the circumstances by balancing the parolee's reasonable expectation of privacy against the necessity of the search to the promote the Commonwealth's legitimate interests. *Samson*, 547 U.S. at 848. This is the test under *Samson* and we adopt it here.

A parolee's reasonable expectation of privacy should be determined by considering the nature of parole itself, the conditions of parole, the place where the search occurred, the circumstances giving rise to the search, the manner of

44

the search, and any other relevant information. *Id.* Without question, a

parolee enjoys a lesser expectation of privacy than an ordinary citizen. *Id.* at

850. On the continuum of state-sanctioned punishments, a parolee also

enjoys a lesser expectation of privacy than a probationer. *Id.* However, parole

is not tantamount to incarceration. Wayne R. LaFave, 5 *Search & Seizure* §

10.10(a) (6th ed.). The likeness of parole to imprisonment does not justify, in

itself, a parolee's lessened expectations of privacy in the context of a parolee

search. *Id.* Rather, reliance upon the legitimate goals of the state in

connection with the parole supervision process provides a more coherent

doctrinal framework. *Id.* at § 10.10(c). This is where the conditions of parole

fit into the analysis under *Samson.* 547 U.S. at 851.

In the present case, it is undisputed that Gasaway was on active parole

at the time of the search. Gasaway was provided with a document setting forth

the specific conditions of his parole, which he signed. Gasaway explicitly

agreed that he would "be subject to search and seizure without a warrant if my

officer has reasonable suspicion that I may have illegal drugs, alcohol or other

contraband on my person or property." We also note KDOC 27-16-01, which

sets forth the general procedure governing parolee searches.[25] KDOC 27-16-01

---

[25] We have not been directed to where a copy of this policy and the regulation that incorporated it into law are included in the record. However, the Commonwealth points out that they are publicly available on the KDOC website, https://corrections.ky.gov/About/cpp/Pages/Chapter-27.aspx. Commonwealth's response brief at 16 n.9. While it is the duty of a court to determine the applicable law, this appears to be a rare case where the content of administrative regulation and policies constitutes an adjudicative fact. *See Clay v. Commonwealth*, 291 S.W.3d 210, 219-20 (Ky. 2008). In the present appeal, we are not specifically applying the KDOC policies and regulations as law to fact. We are considering how the conditions of

carries the force of law as incorporated by refence into 501 KAR[26] 6:270 §

1(1).[27] KDOC 27-16-01 II.A states "[a]n offender shall be subject to a search of

his person, residence, or other property under his control. The basis of any

search shall be consent, a search warrant, or reasonable suspicion that the

search will produce evidence of a violation of the offender's conditions of

supervision."

Under these facts, Gasaway's reasonable expectation of privacy in his

person, residence, or property is minimal, but it does exist to the extent that

the minimum legal standard of reasonable suspicion is required to justify a

warrantless search. *See Sharp*, 40 F.4th at 753. To be clear, the reasonable

suspicion standard is generally the minimum standard imposed *by courts* to

uphold a warrantless search in the absence of a factual showing that a state's

need to perform a suspicionless search outweighs a parolee's reasonable

expectation of privacy.[28] *Samson*, 547 U.S. at 851; *Sharp*, 40 F.4th at 753.

---

parole and related background law informs the Fourth Amendment analysis involving Gasaway's reasonable expectation of privacy and the degree of necessity for the search to promote the Commonwealth's legitimate interest. Therefore, we take judicial notice of the content of the KDOC policies and associated regulations under the authoritative source provision of KRE 201(b)(2).

[26] Kentucky Administrative Regulations.

[27] The Commonwealth's argument concerning the validity of 501 KAR 6:270 § 1(1) and KDOC 27-16-01 are not properly before us.

[28] Contrary to the Commonwealth's argument, such a standard does not give the Department of Corrections unrestrained policymaking authority. While the conditions of parole imposed by the Department and Parole Board are relevant to the analysis, it is solely within the province of a court to determine whether a search is reasonable under the Fourth Amendment.

Once the suspect's reasonable expectation of privacy has been established, the extent to which the search is needed to promote the Commonwealth's legitimate interests must be determined. *Id.* In the parole context, the state's legitimate interests include the necessity of supervising parolees because "parolees . . . are more likely to commit future criminal offenses." *Id.* at 853. Similarly, "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.*

KRS 439.340(3)(b) requires the Parole Board to "adopt administrative regulations with respect . . . to the conditions to be imposed upon parolees."[29] Effective December 4, 2015, the policy of the Board regarding the conditions of parole is to "avoid unnecessary conditions of parole to reduce or minimize the potential for failure by the offender based on technical violation of conditions that are not substantially related to public safety or reduction of recidivism." KYPB[30] 11-01A.[31] This policy carries the force of law through 501 KAR 1:080 § 1(1), which specifically incorporated KYPB 11-01 by reference. Clearly, the policies concerning the conditions of parole as promulgated by the Parole

---

[29] The Commonwealth's claim that KRS 439.340(3)(b) is unconstitutional is not properly before this Court.

[30] Kentucky Parole Board Policies and Procedures.

[31] As with KDOC 27-16-01, the content of administrative policies and regulations is a question of adjudicative fact rather than a matter of applicable law. We, therefore, take judicial notice of KYPB 11-01 under the authoritative source provision of KRE 201(b)(2).

47

Board are reasonable and promote the legitimate goals of protecting public safety and reducing recidivism.

On balance, we conclude the search of Gasaway's truck was reasonable under the totality of the circumstances. The Commonwealth clearly has a legitimate and overwhelming interest in the supervision of parolees. Gasaway's reasonable expectation of privacy was minimal, requiring only reasonable suspicion to justify a warrantless search on these facts. In the Fourth Amendment context, reasonable suspicion exists when a police officer "has a reasonable and articulable suspicion that criminal activity is afoot." *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The basis of reasonable suspicion must be particularized and objective, but "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Here, Det. Dover received a reliable report that drugs were found at Knight's Mechanical. Det. Dover determined the substance was heroin. Upon reviewing the surveillance video and speaking with employees, Det. Dover suspected Gasaway had possessed the heroin. Det. Dover was aware of Gasaway's criminal history involving controlled substances. It was also reasonable for Det. Dover to suspect that Gasaway's truck contained contraband given the totality of the circumstances including Gasaway's parole status. Therefore, we conclude the trial court properly denied Gasaway's

48

motion to suppress the evidence obtained from the warrantless search of his truck.

### IV.   EVIDENCE OF METHAMPHETAMINE AND MARIJUANA WAS INADMISSIBLE UNDER KRE 404(B).

For his second contention of error, Gasaway argues the trial court erred by admitting the methamphetamine and marijuana evidence into evidence.[32] Gasaway asserts it is fundamentally unfair to allow the use of the methamphetamine evidence of which Gasaway was acquitted in the first trial. Gasaway further argues the marijuana evidence should have been excluded as improper character evidence under KRE 404(b). We hold there is no per se rule prohibiting the Commonwealth from introducing, in a subsequent proceeding, evidence of a crime for which the defendant was acquitted. Nevertheless, we hold the Court of Appeals erred by affirming the admission of this evidence under KRE 404(b).

### A.  EVIDENCE OF ACQUITTED CRIMES NOT PER SE INADMISSIBLE

Gasaway asks this Court to join our sister states in barring the admission of evidence relating to crimes for which the defendant has been acquitted. Contrary to the implication of Gasaway's argument, we are not starting from a clean slate on this issue.

In *Hampton v. Commonwealth,* 133 S.W.3d 438, 442 (Ky. 2004), this Court held an acquittal in a criminal case does not preclude the

---

[32] Any questions regarding the admissibility of the Whizzinator are not properly before us.

49

Commonwealth from relitigating an issue in a subsequent proceeding that is governed by a lower standard of proof, such as KRE 404(b). This decision represented a change in Kentucky law, which had previously held "the Commonwealth is precluded from introducing evidence of issues that must have been decided against the Commonwealth at the previous trial." *Id.* at 441 (citing *Commonwealth v. Hillebrand*, 536 S.W.2d 451 (Ky. 1976)) (quotations omitted). The basis of the new rule was this Court's application of the reasoning of the Supreme Court in *Dowling v. United States*, 493 U.S. 342 (1990). *Id.* at 442.

In *Dowling*, the Supreme Court held that neither the prohibition against double jeopardy nor considerations of fundamental fairness under the due process clause preclude the admission, in a subsequent proceeding, of evidence from a prior proceeding that resulted in acquittal, when the evidence is offered under a lower burden of proof. *Id.* at 354. The reason for the rule is that an acquittal does not necessarily prove a defendant is innocent: an acquittal merely proves the existence of reasonable doubt as to the defendant's guilt. *Id.* at 349. Therefore, the admission of such evidence in a subsequent proceeding is simply a question of the applicable rules of evidence. *Id.* at 352. Indeed, the Supreme Court held that non-constitutional sources such as a trial court's discretion to exclude unduly prejudicial evidence under FRE 403 constitute an adequate safeguard against the introduction of fundamentally unfair evidence. *Id.*

50

We are convinced our decision in *Hampton* was sound and adhere to the reasoning of *Dowling.* The facts in *Hampton* demonstrate the prudence of avoiding a per se rule prohibiting this type of evidence if offered under a lesser standard in a subsequent proceeding. In *Hampton,* the defendant was charged with murder, animal cruelty, and tampering with physical evidence. At her first trial, the defendant was convicted of murder and tampering, but the trial court granted a directed verdict of acquittal on the animal cruelty charge. *Id.* at 441. This Court reversed the murder and tampering convictions on direct appeal. *Id.* at 440. The defendant was again convicted of murder and tampering after retrial. *Id.*

On direct appeal, the defendant argued the trial court erred by allowing the Commonwealth to introduce evidence that she shot the family cat, which was the basis of the original animal cruelty charge. *Id.* at 441. This error was unpreserved, and the defendant did not request a limiting instruction. *Id.* We reviewed for palpable error and held the evidence was admissible under KRE 404(b) because it was offered to prove the defendant killed the cat "in an attempt to confuse the crime scene and turn suspicion [for the murder] away from herself." *Id.* at 442. The evidence was admissible "as it related to [the defendant's] commission of the other offenses" and "was not error, palpable or otherwise." *Id.* However, the Court indicated "a limiting instruction or admonition would have been proper if requested." *Id.* An appropriate limiting instruction in this context emphasizes the limited purpose of the evidence *and*

51

the fact that the defendant had been acquitted of the prior act.[33]  *Dowling*, 493 U.S. at 346, 353.

Gasaway relies upon several decisions of other state courts that do not follow the rule as expressed in *Dowling*.  However, these decisions predate our decision in *Hampton*.  *State v. Perkins*, 349 So. 2d 161, 163 (Fla. 1977); *State v. Wakefield*, 278 N.W.2d 307, 308 (Minn. 1979); *McMichael v. State*, 577 P.2d 398 (Nev. 1978); *State v. Scott*, 413 S.E.2d 787, 789 (N.C. 1992), and *Kerbyson v. State*, 711 S.W.2d 289, 290 (Tex. App. 1986).  This Court was aware of the state of the law in 2004 at the time it adopted the reasoning of the *Dowling* majority.  Therefore, we do not find these pre-*Hampton* decisions persuasive.

Additional post-*Hampton* authority is similarly unpersuasive.  Gasaway cites *State v. Mundon*, 292 P.3d 205, 226-27 (Ha. 2012).  In *Mundon*, the Supreme Court of Hawaii declined to follow *Dowling* in reliance on the double jeopardy clause of the Hawaii Constitution, which it interprets more broadly than the federal constitution.  *Id.*  By contrast, we have interpreted the double jeopardy clause of the Kentucky Constitution as co-extensive with the federal constitution.  *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996).  Therefore, the reasoning of *Mundon* is not persuasive.

---

[33] We note the parties agreed a limiting instruction was necessary.  At the close of the Commonwealth's case, the trial court provided an oral admonition, but did not reference Gasaway's acquittal.  However, Gasaway did not challenge the sufficiency of the admonition until his motion for a new trial.  A challenge to the adequacy of an admonition may not be raised for the first time on a motion for new trial.  *Webster v. Commonwealth*, 508 S.W.2d 33, 36 (Ky. 1974).

Similarly, the Supreme Court of Massachusetts declined to follow *Dowling* in reliance on the right to a fair trial under Article 12 of Massachusetts Declaration of Rights, which the Court interprets more expansively than the due process provisions of the federal constitution. *Commonwealth v. Dorazio*, 37 N.E.3d 566, 576 (Mass. 2015). The right to a fair trial is grounded in due process considerations. *United States v. Agurs*, 427 U.S. 97, 107 (1976). This Court has consistently construed due process under Section 11 of the Kentucky as co-extensive with the due process provisions under the Fifth and Fourteenth Amendments of the federal constitution. *Brashars v. Commonwealth*, 25 S.W.3d 58, 61-62 (Ky. 2000). Therefore, we do not find the *Dorazio* decision persuasive.

We adhere to our decision in *Hampton*. Although we determined there is no per se rule prohibiting the introduction of evidence for which a defendant has been acquitted, such evidence must be otherwise admissible under the rules of evidence.

### B. METHAMPHETAMINE AND MARIJUANA INADMISSIBLE AS EVIDENCE OF INTENT UNDER KRE 404(B)

The trial court admitted the evidence of methamphetamine and marijuana as relevant to intent under KRE 404(b). This was in error.

Under KRE 404(a), the general rule is that evidence of other crimes is not admissible to show that a defendant is a person of criminal disposition. We have explained the rule as follows:

> The reasons for the rule are salutary. Ordinarily, such evidence does not tend to establish the commission of the crime. It tends

53

instead to influence the jury, and the resulting prejudice often outweighs its probative value. Ultimate fairness mandates that an accused be tried only for the particular crime for which he is charged. An accused is entitled to be tried for one offense at a time, and evidence must be confined to that offense. The rule is based on the fundamental demands of justice and fair play

*O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky. 1982). KRE 404(b) provides an exception to this salutary rule and provides:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

While KRE 404(b) is couched as an exception to the general rule prohibiting improper propensity evidence, it is still "*exclusionary* in nature." *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994). This Court has long recognized "the application of exceptions to the general rule that evidence of prior bad acts is inadmissible should be closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence." *O'Bryan*, 634 S.W.2d at 156. The admissibility of evidence under KRE 404(b) is evaluated under a three-part test: (1) relevance; (2) probativeness; and (3) prejudicial effect. *Conley v. Commonwealth*, 599 S.W.3d

54

756, 772 (Ky. 2019). The appellate standard of review is for abuse of discretion. *Id.*

This Court has "found error in the admission of KRE 404(b) evidence for an issue not in genuine dispute." *Minch v. Commonwealth*, 630 S.W.3d 660, 667 (Ky. 2021). "Especially in drug cases like this one, other-act evidence is too often admitted almost automatically, without consideration of the 'legitimacy of the purpose for which the evidence is to be used and the need for it.'" *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (quoting *United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012)). The Seventh Circuit Court of Appeals has explained it is "not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. "Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established only through the forbidden propensity inference." *Id.* Trial courts are required to conduct the full KRE 404(b) analysis.

Here, the trial court found the methamphetamine and marijuana evidence was relevant to the issue of Gasaway's intent to possess heroin. Professor Lawson has warned, "there is a very fine line between the use of other crimes evidence to prove intent and the use of such evidence to prove general propensity to commit crime, and as a result there is a greater than normal potential in this 'other purpose' category for abuse of the 'other crimes' law." Robert G. Lawson, *Kentucky Evidence Law Handbook*, § 2.30[4][b] (2022). "Special precautions are critical, to minimize the naked propensity logic." *Id.*

(quoting 1 Mueller & Kirkpatrick, *Federal Evidence* 827 (3d. 2007)).  These precautions include an assurance that "intent was genuinely in dispute, and the uncharged crime was relevant to prove intent to commit the charged crime."  *Id.*  Indeed, the use of other crimes evidence to prove the defendant's knowledge or intent "should await the conclusion of the defendant's case and should be aimed at a specifically identified issue."  *Id.* at § 2.30[2][b][ii].

In his opening statement, Gasaway denied possessing the heroin and did not offer any proof in this case.  By offering the methamphetamine and marijuana evidence during its case-in-chief, the Commonwealth was offering such evidence as direct proof of his intent to possess heroin.  However, intent was not in genuine dispute because Gasaway denied possessing the heroin.  *See Boyd v. Commonwealth*, 357 S.W.3d 216, 224 (Ky. App. 2011).

Although intent may be an element of the crime of possession, "intent is not placed in issue by a defense that the defendant did not do the charged act at all."  *See United States v. Ortiz*, 857 F.2d 900, 904 (2nd Cir. 1988).  "When a defendant unequivocally relies on such a defense, evidence of other acts is not admissible for the purpose of proving intent."  *Id.*  In this context, intent with regard to simple possession is distinct from a trafficking offense which requires proof of possession and a specific intent to sell.  *See Walker v. Commonwealth*, 52 S.W.3d 533, 536 (Ky. 2001).  The situation where a defendant denies possession is also distinct from situations where a defendant admits or does not otherwise dispute the fact of possession, but asserts some innocent mental state such as mere presence, accident, mistake, or lack of knowledge.  *See* 2

56

Wigmore, Evidence § 302 (3d ed. 1940) ("The argument here is purely from the point of view of the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all.").

Because Gasaway's intent to possess heroin was not genuinely in dispute, we conclude the trial court erred by admitting the methamphetamine and marijuana as evidence of such intent. Even if the methamphetamine and marijuana could be viewed as relevant under the circumstances of this case, there was insufficient similarity to justify the admission of the evidence as direct proof of guilt of possession of heroin. Unlike possession cases where different drugs were found contemporaneously in the same location, Gasaway was found guilty of possession of heroin based in part upon evidence of different drugs that were found in a different location on a different occasion. This is precisely the type of propensity logic that our evidentiary rules are designed to prevent.

### C. METHAMPHETAMINE AND MARIJUANA NOT INEXTRICABLY INTERTWINED WITH POSSESSION OF HEROIN CHARGE

The trial court alternatively determined the evidence of methamphetamine and marijuana was admissible under KRE 404(b)(2) because the evidence was inextricably intertwined with the possession of heroin charge. This was also in error.

As cited above, KRE 404(b)(2) provides a separate exception to the prohibition on improper character evidence when evidence of other crimes is

57

"so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party."  "Two types of 'other act' evidence fit the description: (1) evidence of part of the transaction on which the criminal charge is based and (2) evidence required "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  Leslie W. Abramson, 9 *Kentucky Practice Series, Criminal Practice & Procedure* § 27:168 (6th ed.).

Again, Professor Lawson warns of "the need for extraordinary caution" in this use of this exception because the "expanded idea of contextual relevance often paves the way to prove acts that are anything but inseparable from the charged crime, and this label can become a catchall for admitting acts that are far more prejudicial to the defendant than useful in determining guilt of the charged offense."  Robert A. Lawson, *The Kentucky Evidence Law Handbook* § 2.30 [3][c] (quoting 1 Mueller & Kirkpatrick, Federal Evidence 809 (3d. ed. 2007)).  "[T]he key to understanding this exception is the word 'inextricably.'" *Metcalf v. Commonwealth*, 158 S.W.3d 740, 743 (Ky. 2005) (quoting *Funk v. Commonwealth*, 842 S.W.2d 476, 480 (Ky. 1992)).  "The exception relates only to evidence that must come in because it 'is so interwoven with evidence of the crime charged that its *introduction is unavoidable.*'"  *Id.* (citation omitted). Evidence is inextricably intertwined where "two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other."  *Id.* (quoting *Fleming v. Commonwealth*, 284 Ky.

58

209, 144 S.W.2d 220, 221 (1940)).  In other words, the test is whether by excluding evidence of the prior offense, it would be necessary to suppress facts and circumstances relevant to the commission of the charged offense.  *Id.* (citation omitted).

The evidence of the methamphetamine and marijuana was simply not inextricably intertwined with the charge of possession of heroin.  *See United States v. Lightly*, 616 F.3d 321, 354 (4th Cir. 2010) ("the events occurred at different times, at different places, and involved completely different motives, so there were no gaps in the government's case without the evidence").  The methamphetamine and marijuana are different substances than heroin, and these other drugs were found in a different location on a different occasion.  Therefore, this other-crimes evidence was neither part of the same criminal transaction nor essential to allowing the Commonwealth to offer a complete and comprehensible account of the charged crime.

Further, we disagree with the trial court's conclusion that the methamphetamine and marijuana evidence was necessary to explain Gasaway's post-arrest statements to Det. Dover, "I'm not worried about the weed or ecstasy and you damn sure didn't find no three grams of heroin.  And in Louisville, that's just a citation."  As in *Metcalf*, "it would have been a simple matter" for Det. Dover to truthfully testify concerning Gasaway's statements about the heroin without mentioning the portion of the statement relating to uncharged crimes.  158 S.W.3d at 744.  The exclusion of Gasaway's statements regarding the methamphetamine and marijuana would not have required the

59

suppression of any facts bearing on whether Gasaway possessed heroin the day before. Therefore, the evidence of methamphetamine and marijuana was not inextricably intertwined with the heroin charge. The admission of this evidence was in error.

We further conclude the improper admission of the methamphetamine and marijuana evidence was highly prejudicial to Gasaway's defense and constitutes reversible error. The evidence of methamphetamine and marijuana was referenced on multiple occasions throughout the guilt phase of the trial. The direct evidence of heroin possession was not overwhelming. Moreover, the impact of the methamphetamine and marijuana evidence clearly influenced the jury's verdict given its request, during deliberation, for the trial court to provide a copy of the prior oral admonition in writing. Further, any question concerning the adequacy of the trial court's admonition is irrelevant because the evidence of methamphetamine and marijuana was inadmissible for any purpose. *See* KRE 105(a) ("When evidence which is admissible as to one (1) party of for one (1) purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly."). Nor does this case implicate the situation where an adequate admonition is given after a defense objection to inadmissible evidence has been sustained. *See Soto v. Commonwealth,* 139 S.W.3d 827, 861-62 (Ky. 2004). We cannot consider this error harmless. Therefore, reversal for retrial is necessary.

## V.  INTERPRETATION OF VIDEO EVIDENCE WAS ERROR

For his third and final contention of error, Gasaway argues the trial court improperly permitted three witnesses to interpret the contents of the surveillance video.  Although we have already determined reversible error occurred, we will nevertheless address this issue because it is likely to recur upon re-trial.  We conclude that Knight was improperly permitted to interpret the video and decline to review the other claimed errors because they were not properly preserved for review.

The rule in Kentucky is that a witness may not interpret the contents of a recording.  *Gordon v. Commonwealth*, 916 S.W.2d 176, 180 (Ky. 1995).  Specifically, a witness is not permitted to testify concerning events the witness did not perceive in real-time.  *Boyd v. Commonwealth*, 439 S.W.3d 126, 131-132 (Ky. 2014).  In *Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014), we explained:

> [A] lay witness "may not interpret audio or video evidence, as such testimony invades the province of the jury, whose job is to make determinations of fact based upon the evidence."  "It is for the jury to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness."

(Internal citations omitted).  This rule is based on KRE 701, which limits opinion testimony to matters "rationally based on the perception of the witness."  *Id.*  Additionally, witnesses must testify based on personal knowledge under KRE 602.  *Id.*  However, the identification of a person in a video recording does not run afoul of the prohibition on interpreting a recording because such matter is rationally within a witness's perception.  *Id.*

61

Gasway first argues the trial court erred by allowing Jeremy Knight to interpret the video. This error was properly preserved by objection.[34] The Court of Appeals held it was proper for Knight to identify Gasaway on the video because he was familiar with Gasaway's appearance. However, the record reflects Knight's testimony concerning the video went well beyond identification. While the video clip of Gasaway was playing before the jury, the following questioning occurred:

**Com.**: Now you said you viewed the video and saw him [Gasaway] pull a phone out?

**Knight**: Correct.

**Com.**: And where was the item you were talking about falling out?

**Knight**: So, the white,

**Com.**: Go ahead.

**Knight**: Item there.

**Com.**: Is that that on the floor there?

**Knight**: Yes sir.

**Com.**: Now, that is eventually what you found, correct?

**Knight:** Yes.

**Com.**: You started with what?

**Knight**: I started with Austin when he found it.

**Com.**: Now is that video as well?

---

[34] Gasaway made a "prophylactic" objection to the line of questioning concerning Knight's interpretation of the video. At that time, he did not mention or otherwise preemptively object to the testimony of any other witnesses.

(Video clip of Austin and Daniel plays).

**Knight**: Yes. So Austin and Daniel had just got off break and walked in and he picked it up and was like, "huh what's that?".

After the video stopped playing, Knight continued to testify about what he observed on the video. Knight was clearly interpreting the contents of the video clip rather than testifying from personal knowledge, perception, or recollection. Therefore, it was improper to allow this line of questioning over Gasaway's objection.

Gasaway also argues the lower courts erred by allowing Brian Tharpe to interpret the video. However, we have not been cited to any specific objection in the record concerning this allegedly improper testimony. Our review of the record indicates that, following the questioning of Tharpe by the parties, the jury raised a question concerning whether the video had been viewed in its entirety from the time Gasaway dropped an item and the time the heroin was found. The jury also posed a question concerning sequencing of the video clips.

Gasaway objected to the question about how much of the video had been viewed because it had already been testified to by Knight. Regarding the sequencing of the video clips, the parties agreed the trial court could ask Tharpe which parts of the video he had personally viewed. While Tharpe continued testifying regarding his opinions of what occurred on the video, there was no further objection. Gasaway did not request palpable error review of this issue and we decline to address it further.

63

Gasaway finally argues Det. Dover was improperly permitted to interpret the video. The Court of Appeals concluded Det. Dover's testimony was improper, but determined the error was harmless under *Boyd*, 439 S.W.3d at 132. Gasaway points to three instances where the trial court erred by allowing Det. Dover to interpret the video. However, we are cited to only one instance where Gasaway made an objection. And then, the objection was sustained and Gasaway requested no additional relief.

Regarding the first instance of Det. Dover's allegedly improper testimony, Gasaway did not object. He has not requested palpable error and we decline to review this issue further.

Regarding the second instance of allegedly improper testimony, the Commonwealth approached the bench during its questioning of Det. Dover. The Commonwealth apologized because the still photographs from the surveillance video that it was intending to introduce had been altered and were not ready for introduction into evidence. The Commonwealth asked for a brief recess to obtain clean copies of the photographs. Gasaway agreed to allow Det. Dover to reference the altered photographs during his testimony, and then allow the Commonwealth to introduce the clean copies when they arrived. No further objection was made. Gasaway has not requested palpable error review and we decline to address this issue further.

Regarding the third and final instance of allegedly improper testimony, the Commonwealth asked Det. Dover, "Do have any question at all that was dropped by Mr. Gasaway was what was tested positive for heroin at the lab?"

64

Gasaway then objected to the question on the basis that it called for a legal conclusion. Notably, Gasaway stated, "He can say what he saw on the video." The trial court then proposed an alternative wording of the question to which both parties agreed. The Commonwealth then asked Det. Dover, "Do you have any question whether the substance found on the floor by Austin McClanahan at Knight's Mechanical was the same substance tested at the Kentucky State Police Lab?" Det. Dover answered, "There's no question." Gasaway did not make any further objection or request additional relief. There was no request for palpable error review and we decline to address the issue further.

## VI. CONCLUSION

In conclusion, we overrule our decision in *Bratcher* and reaffirm the reasoning of the *Samson* decision as stated above. We hold, albeit for different reasons than the courts below, the trial court properly denied Gasaway's motion to suppress. However, the trial court erred by admitting evidence of methamphetamine and marijuana under KRE 404(b) because intent was not at issue and the evidence was not inextricably intertwined with the heroin charge. Additionally, the trial court improperly allowed a witness to interpret the contents of a video recording.

Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part. We remand to the Hardin Circuit Court for further proceedings consistent with this opinion.

All sitting. Conley, Lambert, and Thompson, JJ., concur. VanMeter, C.J.; Bisig and Keller, JJ., concur in result only.

65

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General